## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: Vehicle Driving Data Tracking Litigation | MDL____ |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PLAINTIFF JARIYA THONGSAWANG FOR TRANSFER AND CENTRALIZATION PURSUANT TO 28 U.S.C. § 1407

Pursuant to 28 U.S.C. § 1407 and the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiff Jariya Thongsawang ("Plaintiff") respectfully submits this Memorandum of Law in Support of her Motion for Transfer and Centralization of all currently filed federal cases and any subsequent tag-along cases ("Actions") arising out of auto manufacturers' alleged unlawful collection and dissemination to third parties of consumer driving data through in-vehicle telematics systems. Plaintiff requests that the cases be transferred and consolidated in the Central District of California, before either the Honorable André Birotte, Jr., the Honorable Maame Ewusi-Mensah Frimpong, the Honorable Dolly M. Gee, the Honorable Josephine L. Staton, the Honorable Fernando M. Olguin, or the Honorable Wesley L. Hsu.

## I.     INTRODUCTION

This litigation involves the allegedly unlawful collection and dissemination of vehicle driving data through in-vehicle telematics systems. Plaintiffs in these Actions allege that Defendants General Motors LLC ("GM"), OnStar, LLC ("OnStar"), and LexisNexis Risk Solutions Inc. ("LexisNexis" and, collectively, "Defendants")[1] unlawfully collected location and driving behavior data from GM-manufactured vehicles and disseminated such data to third parties,

---

[1] Any future actions alleging similar collection and dissemination of consumer driving data by other auto manufacturers should be treated as tag-along cases and coordinated with these Actions.

including but not limited to automobile insurance providers. The Actions were filed in the wake of reporting by the *New York Times* that automobile manufacturers, like GM, are tracking drivers' behavior through internet-connected vehicles and sharing it with data brokers such as LexisNexis who, in turn, sell reports including this information to automobile insurance providers.

Each of the Actions is a putative class action, and each is filed on behalf of virtually identical nationwide classes and similar state subclasses of consumers who were subjected to the alleged practices. *See Chicco v. General Motors LLC et al.*, Case No. 9:24–cv–80281 (S.D. Fla.), Complaint ¶ 71; *Dinardo v. General Motors LLC et al.*, Case No. 3:24–cv–00524 (M.D. Pa.), Complaint ¶ 40; *King et al v. General Motors LLC et al.*, Case No. 2:24–cv–02560 (C.D. Cal.), Complaint ¶ 61; *Reed et al. v. General Motors LLC et al.*, Case No. 2:24–cv–10804–JJCG–CI (E.D. Mich.), Complaint ¶ 57; *Thongsawang v. General Motors LLC et al.*, Case No. 8:24–cv–00695 (C.D. Cal.), Complaint ¶ 31; *Block et al. v. General Motors LLC et al.*, Case No. 2:24–cv–10824 (E.D. Mich.), Complaint ¶¶ 52, 53; and *Landman v. General Motors LLC al.*, Case No. 1:24–cv–02238 (S.D.N.Y.), Complaint ¶ 51. While the causes of action vary slightly (some assert common law and statutory privacy claims, while others include credit reporting claims), each case is about the unlawful tracking of vehicle driving data without clear and informed consent, and all of them should be centralized in one court.

Plaintiff presently is aware of the seven Actions listed above and, based on the size of the consumer population impacted by Defendants' unlawful vehicle driving data collection and dissemination, and the public reporting of these practices, Plaintiff anticipates that many additional cases will be filed nationwide. All Actions currently on file are in their infancy. None of the Defendants has answered the complaint in any of the Actions.

Based on the numerous common questions of fact involved in the Actions, the compelling need to establish uniform and consistent standards in conducting pretrial discovery and motion practice, and to avoid duplication of effort and the possibility of inconsistent rulings, Plaintiff requests that the cases be transferred to and centralized in the Central District of California, which offers the most efficient and convenient venue given the relatively low MDL burden in that district and the abundance of highly qualified, diverse judges ready to manage this litigation.

## II.   BACKGROUND

This Motion for Transfer and Centralization involves seven actions pending in five different federal districts asserting common factual allegations and involving overlapping claims, classes, and legal issues. Based on the extensive press coverage of Defendants' nationwide practices, and the number of consumers affected, Plaintiff expects additional actions to be filed in additional federal jurisdictions alleging similar claims on behalf of similar classes.

### A.   Defendants' Alleged Misuse of Plaintiffs' Vehicle Driving Data

On March 11, 2024, the *New York Times* reported that automobile manufacturers have been tracking millions of drivers' behavior through internet-connected vehicles and sharing it with data brokers such as LexisNexis and Verisk. Many automobile manufacturers offer optional features in their mobile apps that connect to the in-vehicle telematics system and rate the vehicle owner's driving behavior. When these features are activated, automobile companies can provide the collected information to data brokers like LexisNexis and Verisk. Plaintiffs allege the manufacturers never disclosed these collection practices or obtained informed consent. The data brokers in turn create "consumer disclosure reports" of individuals' driving history, which they then sell to automobile insurance providers. These reports show trip length and driving behavior, such as "hard braking," "hard accelerating" and speeding, and many other data points. Insurance

companies use the reports to assess the risk of a current or potential customer and adjust rates or refuse coverage accordingly.

Specifically, through its subsidiary OnStar, GM offers its "OnStar Smart Driver" service for its Chevrolet, Buick, GMC, and Cadillac brand vehicles. Plaintiffs allege this service collects information about a driver's mileage, speed, braking, acceleration, and other data points, which GM and OnStar share with LexisNexis. All Defendants subjected consumer plaintiffs to these surveillance and insurance-pricing practices without clear disclosure and informed consent.

### B.    Plaintiffs

All plaintiffs in the pending Actions have filed civil actions arising from Defendants' unlawful data collection and dissemination practices. The Actions are pursued on behalf of persons or entities whose vehicle driving data was collected and disseminated by Defendants.

All pending federal cases present a common core of facts, in that each (i) alleges that Defendants unlawfully stored, disseminated, and/or sold vehicle driving data collected through in-vehicle telematics systems; (ii) asserts injury and damages arising from Defendants' wrongful conduct; and (iii) alleges the same or similar conduct by Defendants. Indeed, the factual allegations in plaintiffs' complaints are nearly identical in numerous critical respects.

### C.    Defendants

Defendant General Motors LLC ("GM") is a multinational automotive manufacturer that owns and manufactures automobiles under multiple brand names, including Chevrolet, GMC, Cadillac, and Buick. Defendant OnStar, LLC ("OnStar") is a subsidiary of GM that provides subscription-based communications, in-vehicle security, emergency services, turn-by-turn navigation, and remote diagnostics systems for vehicles in the United States. Defendant LexisNexis Risk Solutions Inc. ("LexisNexis") is a global data and analytics company that

provides data and technology services, analytics, predictive insights, and fraud prevention for a wide range of industries, including automobile insurance providers.

While it has been reported that other automobile manufacturers employ similar data collection and dissemination practices, Plaintiff is not aware of any lawsuits against other manufacturers. In the event that lawsuits are filed against other manufacturers based on similar practices, they should all be transferred to, and centralized in, one court.

### D.    Status of the Actions

Plaintiffs filed the Actions in California, Florida, Michigan, Pennsylvania, and New York, all within the three-week period following the *New York Times*' initial article. Given the infancy of these cases, none of the plaintiffs has been permitted to conduct discovery or take any other actions that would move the matters toward trial such that transfer would be unduly prejudicial or inefficient in any respect. These Actions are in the earliest procedural stage — no defendant has answered — and, accordingly, it is an ideal time to coordinate the Actions.

### III.    <u>ARGUMENT</u>

The Actions listed in the attached Schedule of Actions arise out of the same alleged practices and name the same Defendants.[2] There is substantial overlap between the causes of action: each of the Actions advances claims based on common law and statutory privacy rights such as the *Thongsawang* action; claims based on credit reporting statutes (which similarly focus on consumer privacy protections afforded by such statutes), such as the *King* action; or both, such as the *Chicco* action.

---

[2] *Reed et al. v. General Motors LLC et al.*, Case No. 2:24–cv–10804–JJCG–CI (E.D. Mich.) alleges claims against General Motors LLC and OnStar, LLC only.

The Actions involve common issues of fact. Centralization will promote the convenience of the parties and witnesses as well as the just and efficient conduct of the litigation. *See* 28 U.S.C. § 1407. Transfer and centralization will mitigate the possibility of inconsistent rulings, including rulings regarding class certification, and will promote judicial economy by providing a single forum to which future tag-along actions can be transferred. Accordingly, Plaintiff respectfully moves this Panel for transfer to the Central District of California, the most favorable district for centralization, before either the Honorable André Birotte, Jr., the Honorable Maame Ewusi-Mensah Frimpong, the Honorable Dolly M. Gee, or the Honorable Josephine L. Staton, the Honorable Fernando M. Olguin, or the Honorable Wesley L. Hsu, all capable and experienced jurists of the highest caliber.

## A. These Actions and Any Tag-Along Actions Are Appropriate for Transfer and Centralization Under 28 U.S.C. § 1407(a)

Transfer and centralization is appropriate if civil actions pending in different districts "involv[e] one or more common questions of fact" and this Panel determines that transfer will further "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). "The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation costs, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." *Manual for Complex Litigation*, § 20.131 (4th ed. 2004). Transfer and centralization for pretrial proceedings would achieve those objectives here and should be granted.

### i. The Actions Involve Numerous Common Questions of Fact

The first element of the Section 1407 transfer analysis is whether there are one or more common questions of fact. *See* 28 U.S.C. § 1407. The statute, however, does not require a

"complete identity or even [a] majority" of common questions of fact to justify transfer. *In re Zyprexa Prods. Liab. Litig.*, 314 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004).

The cases share a common core of operative factual allegations, namely the collection and dissemination of consumer driving data without informed consent. The numerous factual questions common to the Actions include:

- Whether Defendants disclosed their data collection and dissemination practices;

- Whether Defendants unlawfully collected and stored vehicle driving data of class members through telematics systems installed in GM-manufactured vehicles;

- Whether Defendants unlawfully transmitted or sold vehicle driving data of class members to unauthorized third parties without class members' proper consent;

- Whether plaintiffs and the other members of the putative classes were injured by Defendants' conduct and, if so, the determination of the appropriate class-wide measure of damages; and

- Whether plaintiffs and other members of the putative classes are entitled to, among other things, injunctive relief and, if so, the nature and extent of such relief.

In addition, all Actions rely upon similar legal theories of recovery. These theories include violation of the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq*., and violations of state consumer protection statutes including N.Y. Gen. Bus. Law § 349; Cal. Bus. & Prof. Code § 17200 *et seq.*; Michigan Consumer Protection Act § 445.903(1); and Deceptive & Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*. Thus, the lawsuits share related underlying legal theories of liability, each turning on Defendants' unlawful data collection, storage, transmission, and sale practices. As the Panel previously has stated, "the presence of additional or differing legal theories is not significant when the actions still arise from a common factual core." *In re Oxycontin Antitrust Litig.*, 542 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008).

Because numerous common issues of fact exist among these Actions, the pending actions satisfy the first element of the transfer analysis under Section 1407.

### ii. MDL Transfer and Centralization Will Further the Convenience of the Parties and the Witnesses

Resolution of these common issues in a single forum would further the convenience of all parties and witnesses. *See* 28 U.S.C. § 1407(a). Because all Actions involve similar allegations and factual questions, plaintiffs in the Actions will require depositions of the same witnesses and discovery of the same documents. Defendants likely will raise the same discovery objections and claims of privilege, and will seek similar protective orders, in each case. Absent centralization and transfer, all parties will be subjected to duplicative discovery and witnesses will face multiple, redundant depositions. *See, e.g.*, *In re Pilot Flying J Fuel Rebate Contract Litigation (No. 11)*, 11 F. Supp. 3d 1351, 1352 (J.P.M.L. 2014) ("Centralization will avoid repetitive depositions of [the defendant's] officers and employees and duplicative document discovery regarding the alleged scheme."); *In re Uranium Indus. Antitrust Litig.*, 458 F. Supp. 1223, 1230 (J.P.M.L. 1978) ("[Plaintiffs] will have to depose many of the same witnesses, examine many of the same documents, and make many similar pretrial motions in order to prove their . . . allegations. The benefits of having a single judge supervise this pretrial activity are obvious.").

Absent transfer, the federal court system will be forced to administer — and Defendants will be compelled to defend — these related Actions and any tag-along actions across multiple venues, all proceeding on potentially different pretrial schedules and subject to different judicial decision-making and local procedural requirements. Moreover, each plaintiff will be required to monitor and possibly participate in each of the other similar actions to ensure that Defendants do not provide inconsistent or misleading information. Many of the same pretrial disputes are likely to arise in each action. Likewise, due to the similar causes of action in each complaint, Defendants will likely assert the same defenses, as well as file motions to dismiss and for summary judgment on the same claims based on the same arguments in each action.

None of the pending cases has progressed to the point where efficiencies will be forfeited through transfer to an MDL proceeding. This Panel has recognized that consolidating litigation in one court benefits *both* plaintiffs and defendants. For example, pretrial transfer would reduce discovery delays and costs for plaintiffs, and permit plaintiffs' counsel to coordinate their efforts and share the pretrial workload. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,* 173 F. Supp. 2d 1377, 1379 (2001) ("[I]t is most logical to assume that prudent counsel will combine their forces and apportion their workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary, thereby effectuating an overall savings of cost and a minimum of inconvenience to all concerned."); *In re Baldwin-United Corp. Litigation,* 581 F. Supp. 739, 741 (J.P.M.L. 1984) (same). As for Defendants, fact and expert depositions will be coordinated, document production will be centralized, and travel for its current and former employees will be minimized, since they will only have to appear in one location rather than multiple districts around the country.

Transfer also will reduce the burden on the parties by allowing more efficient and centralized divisions of workload among the attorneys already involved in this litigation, as well as those who join later. Plaintiffs themselves will reap efficiencies from being able to divide up the management and conduct of the litigation as part of a unified MDL process through a plaintiffs' steering committee or similar mechanism, instead of each plaintiffs' firm separately litigating its own cases on distinct and parallel tracks. *See, e.g.*, *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d at 1379; *In re Tylenol Mktg., Sales Pracs. and Prods. Liab. Litig.*, 936 F. Supp. 2d at 1379 ("Centralization will . . . conserve the resources of the parties, their counsel, and the judiciary.").

In sum, transfer of these Actions would serve the convenience of the parties and eliminate duplicative discovery, saving the parties and the courts significant time, effort, and money.

**B.  Transfer and Centralization Will Promote the Just and Efficient Conduct of These Actions**

Centralization is necessary to prevent inconsistent pretrial rulings on many central issues, which would present significant problems due to the substantial consistency in factual and legal allegations among all Actions. *See In re: Lumber Liquidators Chinese-Manufactured Flooring Products Mktg., Sales Practices and Products Liability Litig.*, 109 F. Supp. 3d at 1383 ("Centralization will . . . avoid inconsistent pretrial rulings (including on issues of class certification and *Daubert* motion practice)."). A single MDL judge coordinating pretrial discovery and ruling on pretrial motions in all of these federal cases will minimize this potential for conflicting rulings, while also reducing witness inconvenience, the burden on multiple courts, and the litigation's overall expense. *In re: Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 65 F. Supp. 3d 1402, 1405 (J.P.M.L. 2014) ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary."); *In re Tylenol Mktg., Sales Pracs. and Prods. Liab. Litig.*, 936 F. Supp. 2d at 1379 ("Centralization will . . . prevent inconsistent pretrial rulings (on Daubert issues and other matters).").

Centralization will mitigate these problems by enabling a single judge to manage discovery and coordinate the parties' efforts. This will reduce litigation costs and minimize inconvenience to the parties and witnesses, to the benefit of litigants, third parties, and the courts. *See In re Enfamil Lipil Mktg. and Sales Practices Litig.*, 764 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011) ("Centralizing the actions will allow for the efficient resolution of common issues and prevent unnecessary or duplicative pretrial burdens from being placed on the common parties and

witnesses."); *In re: Lumber Liquidators Chinese-Manufactured Flooring Products Mktg., Sales Practices and Products Liability Litig.*, 109 F. Supp. 3d at 1383 ("Centralization will . . . conserve the resources of the parties, their counsel and the judiciary.").

Centralizing these Actions under Section 1407 will ensure streamlined resolution of this litigation to the overall benefit of the parties and the judiciary. *In re Amoxicillin Patent & Antitrust Litig.*, 449 F. Supp. 601, 603 (J.P.M.L. 1978) (granting transfer and consolidation of three cases "[b]ecause of the presence of complex factual questions and the strong likelihood that discovery concerning these questions will be both complicated and time-consuming, we rule that transfer under Section 1407 is appropriate at the present time even though only three actions are presently involved").

Finally, it is possible that this litigation will continue to grow. It has only been three weeks since the initial *New York Times* article alerted affected consumers to Defendants' unlawful practices. In that time, seven lawsuits have been filed, but there are potentially millions of other affected consumers who could file suit. The likelihood that this litigation will continue to grow further weighs in favor of centralization. *See In re Schnuck Markets, Inc., Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1381 (J.P.M.L. 2013) (granting § 1407 motion where the estimated number of affected customers across five states indicated that additional tag-along actions could be filed).

Accordingly, transfer to a single district court is appropriate for the just and efficient resolution of these cases.

**C. The Central District of California Is an Appropriate and Optimal Transferee Forum, Offering a Plethora of Qualified Judges, Including Judges Birotte, Frimpong, Gee, Staton, Olguin, and Hsu**

Plaintiff respectfully submits that the Central District of California is the superior forum

for the centralized action, and Judges Birotte, Frimpong, Gee, Staton, Olguin, and Hsu all would make ideal transferee judges. In choosing an appropriate transferee forum, this Panel considers: (1) where the largest number of cases is pending; (2) where discovery has occurred; (3) where cases have progressed furthest; (4) the site of the occurrence of the common facts; (5) where the cost and inconvenience will be minimized; and (6) the experience, skill, and caseloads of available judges. *Manual for Complex Litigation*, § 20.132 (4th ed. 2004). While several of these criteria are not yet implicated due to the infancy of the Actions, the Central District of California presents the most appropriate forum for the transfer and centralization of these actions, primarily because it has only one vacancy and a low number of MDLs, a well-experienced and diverse judiciary, and is where two of the seven Actions are pending.

### i.  The Central District of California Has Favorable Docket Conditions and the Judicial Resources to Efficiently Manage the Litigation

The Panel favors districts where the courts have capacity to handle the cases, and the transferred cases will not add to an already overburdened docket. *In re Webvention LLC ('294 Patent Litig.*, 831 F. Supp. 2d 1366, 1367 (J.P.M.L. 2011) (avoiding transfer to districts with "large civil caseloads" and choosing a transferee court with "more favorable" docket conditions). The Panel considers docket conditions in selecting a transferee district. Multidistrict Lit Man § 6:17. *See also In re Wright Medical Technology, Inc., Conserve Hip Implant Products Liability Litigation*, 844 F. Supp. 2d 1371 (J.P.M.L. 2012); *In re Skechers Toning Shoe Products Liability Litigation*, 831 F. Supp. 2d 1367 (J.P.M.L. 2011).

According to Federal Court Management Statistics published on December 31, 2023, the median time from filing to disposition for civil cases in the Central District of California is 4.1

months.[3] By comparison, in the other districts where remaining Actions are filed, the median time from filing to disposition is significantly greater: 7.8 months in the Eastern District of Michigan; 10.8 months in the Middle District of Pennsylvania; and 5.6 months in the Southern District of New York.[4] Therefore, the Central District of California has the "fastest" docket among the district courts where the Actions are pending.

The Central District of California currently has capacity to receive the transfer of these Actions. According to this Panel's statistics, as of April 1, 2024, there are only five MDL proceedings pending in the Central District of California.[5] With 36 District Judges (including those on senior status) and 24 Magistrate Judges, the Central District of California is well-equipped to handle, and experienced in handling, such complex proceedings.

Furthermore, the Central District of California has the second lowest MDL-to-judge ratio of all the districts where Actions have been filed to date: the Southern District of Florida currently has nine MDLs on its docket across a total of 29 judges; the Eastern District of Michigan currently has five MDLs on its docket across a total of 23 judges; the Southern District of New York currently has 11 MDLs on its docket across a total of 47 judges; and the Middle District of Pennsylvania currently has one MDL on its docket across a total of nine judges. Therefore, the Central District of California is the ideal transferee court for these Actions.

---

[3] *See* Comparison of Districts Within the First Circuit – 12-Month Period Ending December 31, 2023, *available at* https://www.uscourts.gov/sites/default/files/fcms_na_distcomparison1231.2023.pdf (last visited April 5, 2024).

[4] *Id.* The data for the median time from filing to disposition for civil cases is listed as 0.0 for the Southern District of Florida in the September 30, 2023, and December 31, 2023 reports.

[5] *See* MDL Statistics Report – Distribution of Pending MDL Dockets by District, April 1, 2024, *available at* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-April-1-2024.pdf (last visited April 5, 2024).

ii.     **The Central District of California Has a Diverse, Energetic, and Experienced Judiciary with the Resources to Take on a Major MDL**

The availability of an experienced, competent judge weighs heavily in favor of transferring a case to that district. The Central District of California's judiciary is an embarrassment of riches, and any of its judges would be excellent, including Judges Birotte, Frimpong, Gee, Staton, Olguin, and Hsu. All of these judges are experienced, capable, and well-qualified to preside over this MDL.

Notably, Judge Birotte, who was assigned to the *Thongsawang* case, currently presides over a similarly complex and high-profile vehicle MDL that is scheduled to go to trial on June 24, 2024. *In re Ford Motor Co. DPS6 PowerShift Transmission Prods. Liab. Litig.*, MDL No. 2814 (J.P.M.L. 2018). Judge Birotte has presided over many additional complex and high-profile cases since his appointment to the bench in 2014.

Judge Birotte's experience before his appointment to the bench also testifies to his capabilities. Before being sworn in as a federal district judge, Judge Birotte served as United States Attorney for the Central District of California from 2010 to 2014. As United States Attorney, Judge Birotte was responsible for overseeing approximately 265 attorneys and 200 staff members located in offices in Los Angeles, Riverside, and Santa Ana. From 2003 to 2010, Judge Birotte served as Inspector General of the Los Angeles Police Department. Judge Birotte also served as an Assistant United States Attorney in the Central District from 1995 to 1999 and as a Deputy Public Defender in Los Angeles County from 1991 to 1995.

Judge Maame Ewusi-Mensah Frimpong also would make an excellent choice. She was appointed to her current position in early 2022, and now has more than two years of experience on the federal bench with complex matters, in addition to approximately seven years as a judge of the Los Angeles County Superior Court. She does not currently preside over any MDL. She is more than capable and ready to handle one now.

Judges Gee, Staton, and Olguin all have been on the federal bench for more than 10 years and are well-seasoned jurists of the highest caliber. None of these experienced judges is currently presiding over an MDL.

Judge Wesley L. Hsu was appointed to the Central District of California in 2023 and has nearly six years of experience as a judge of the Los Angeles County Superior Court. Judge Hsu also is not currently presiding over any MDL. Judge Hsu has particularly relevant expertise in cybersecurity. His 17-year tenure as an assistant United States attorney in the U.S. Attorney's Office for the Central District of California included seven years as chief of the Cyber and Intellectual Property Crimes Section and makes him particularly well-equipped, and an excellent choice, to handle this litigation.

Selection of any of these esteemed and extremely qualified judges also would advance the cause of promoting diversity in the roster of MDL judges.[6]

### iii.     The Remaining Factors Are Neutral

The remaining factors are neutral, favoring no specific district. There is no large number of cases in any one district. (The Central District of California and in the Eastern District of Michigan tie for the largest number of cases, with two pending in each venue.) Each of the Actions is in its infancy, Defendants have not answered any of the complaints, and no discovery has occurred. With electronic discovery predominating, the site of the occurrence is less important than in a case where the location of physical evidence takes center stage. Further, because the

---

[6] *See* Duke Law Guidelines and Best Practices Addressing Chronic Failure to Diversify Leadership Positions in the Practice of Law (First Draft Pending Revision) (May 10, 2018) ("The JPML should continue to diversify the composition of appointed MDL transferee judges."), *available at* https://judicialstudies.duke.edu/wp-content/uploads/2018/05/Panel-6-Duke-Law-Guidelines-And-Best-Practices-Addressing-Chronic-Failure-To-Diversify-Leadership-Positions-In-The-Practice-Of-Law.docx.

different defendants are headquartered in different venues, and because the affected consumers are nationwide, there are many different sites for the alleged collection, dissemination, or use of the data. The parties will cooperate to take depositions at a place that is convenient for each of the witnesses.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that her motion be granted and that the Panel order transfer of the Actions listed in the attached Schedule of Actions, plus any future tag-along actions, to the Central District of California, before Judges Birotte, Frimpong, Gee, Staton, Olguin, or Hsu, for consolidated pretrial proceedings in accordance with 28 U.S.C. § 1407.

Dated:  April 5, 2024                                Respectfully submitted,

**AHDOOT & WOLFSON, PC**

/s/ *Tina Wolfson*
Tina Wolfson
*twolfson@ahdootwolfson.com*
Theodore W. Maya
*tmaya@ahdootwolfson.com*
Christopher E. Stiner
*cstiner@ahdootwolfson.com*
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Tel: 310-474-9111
Fax: 310-474-8585

*Counsel for Plaintiff*
*and the Putative Classes*