BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| | ) | MDL No. 3115 |
| | ) | |
| IN RE CONSUMER VEHICLE DRIVING | ) | REED PLAINTIFFS' RESPONSE TO |
| DATA TRACKING LITIGATION | ) | PLAINTIFF JARIYA THONGSAWANG'S |
| | ) | MOTION FOR TRANSFER AND |
| | ) | CENTRALIZATION PURSUANT TO 28 |
| | ) | U.S.C. §1407 |
| | ) | |

# TABLE OF CONTENTS

ARGUMENT ............................................................................................................1

I.   Transfer and Centralization Are Appropriate ...........................................................1

    A.   The Related Actions Involve Common Questions of Fact ............................................1
    B.   Centralization Will Be More Convenient for the Parties and Witnesses ....................2
    C.   Centralization Will Promote the Just and Efficient Conduct of the Related Actions ..4

II.  The Eastern District of Michigan Is By Far the Motion Appropriate Transferee Court .........4

    A.   Factor 1: The Eastern District of Michigan Has the Largest Number of Cases ..........5
    B.   Factors 2 and 3 Are Neutral ............................................................6
    C.   Factors 4 and 5: The Site of the Occurrence of the Common Facts and Where Cost and Inconvenience Will be Minimized Favors the Eastern District of Michigan ........7
    D.   Factor 6: The Experience, Skill, and Caseloads of Available Judges Favors the Eastern District of Michigan ............................................................10
    E.   The Above Factors Overwhelmingly Favor the Eastern District of Michigan ..........12

III. The Eastern District of Michigan Has Outstanding Jurists With Ample Complex Auto Litigation Experience Who Will Efficiently and Effectively Manage the Consolidated Litigation ............................................................................................................12

IV.  Given the Small Number of Related Actions, Section 140(a) Transfer to the Eastern District of Michigan Would Be an Appropriate Alternative to Section 1407 Centralization ...........14

CONCLUSION ............................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Block et al. v. General Motors, LLC et al.*, Case No. 2:24-cv-10824 (E.D. Mich.) ...................... 5
*Carnine et al. v. General Motors, LLC et al.*, Case No. 4:24-cv-11004 (E.D. Mich.) .................. 5
*Chapman v. Gen. Motors, LLC*, Case No. 19-cv-12333 (E.D. Mich.) ........................................ 12
*Chicco v. General Motors LLC, et al*., Case No. 9:24-cv-80281 (S.D. Fla.)................................. 5
*Cogle v. General Motors LLC, et al.*, Case No. 2:24-cv-11062 (E.D. Mich.)............................... 5
*Dinardo v. General Motors, LLC, et al.*, Case No. 3:24-00524 (M.D. Pa.) .................................. 5
*Figlio, et al. v. General Motors LLC, et al*., Case No. 1:24-cv-01669 (N.D. Ga.)........................ 5
*Fisher v. FCA US LLC*, Case No. 23-cv-10426 (E.D. Mich.) ...................................................... 13
*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, 598 F. Supp. 2d 1366 (J.P.M.L. 2009).. 3
*In re Automotive Parts Antitrust Litig.*, MDL No. 2311 (E.D. Mich.) ....................................... 11
*In re Chevrolet Bolt EV Battery Litig.*, Case No. 20-cv-13256 (E.D. Mich.)............................. 12
*In re Chrysler Pacifica Fire Recall Prod. Liab. Litig.*, MDL 3040 (E.D. Mich.) ...................... 12
*In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litig.*, 338
   F. Supp. 3d 1347 (J.P.M.L. 2018)........................................................................................ 5
*In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d 1372 (J.P.M.L. 2021) ................................ 3
*In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.*, 190 F. Supp. 3d 1361 (J.P.M.L.
   2016) ................................................................................................................................ 5
*In re FCA US LLC Monostable Electronic Gearshift Litig.*, MDL No. 2744 (E.D. Mich.)... 11, 12
*In re Ford Motor Co. Speed Deactivation Switch Prod. Liab.*, 398 F. Supp. 2d 1365 (J.P.M.L.
   2005) ................................................................................................................................ 7
*In re Gen. Motors Corp. Sec. & Derivative Litig.*, 429 F. Supp. 2d 1368 (J.P.M.L. 2006) .......... 7
*In re General Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, MDL No. 2818 (E.D. Mich.)
   ................................................................................................................................ 11, 13
*In re IDT Corp. Calling Card Terms Litig.*, 278 F. Supp. 2d 1381 (J.P.M.L. 2003).................... 4
*In re Imagitas, Inc., Drivers' Privacy Prot. Act Litig.*, 486 F. Supp. 2d 1371 (J.P.M.L. 2007)..... 4
*In re Insulin Pricing Litig.*, MDL No. 3080, 2023 WL 9290540 (J.P.M.L. Dec. 6, 2023) ........... 2
*In re Neo Wireless, LLC, Patent Litig.*, MDL No. 3034 (E.D. Mich.) ....................................... 13
*In re Personalweb Techs., LLC, and Level 3 Commc'ns, LLC, Patent Litig.*, 340 F. Supp. 3d
   1373 (J.P.M.L. 2018)......................................................................................................... 5
*In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968) ................................................. 4
*In re Rio Hair Naturalizer Prod. Liab. Litig.*, 904 F. Supp. 1407 (J.P.M.L. 1995)...................... 8
*In re Terrorist Attacks on Sept. 11, 2001*, 295 F. Supp. 2d 1377 (J.P.M.L. 2003)....................... 4
*In re Upjohn Co. Antibiotic "Cleocin" Prod. Liab Litig*, 450 F. Supp. 1168 (J.P.M.L. 1978)...... 8
*In re Wireless Telephone Radio Frequency Emissions Prods. Liab. Litig.*, 170 F. Supp. 2d 1356
   (J.P.M.L. 2001) .............................................................................................................. 10
*In re: Samsung Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1368 (J.P.M.L. 2023).......... 6
*In re: Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., Prod. Liab. Litig.*, 704
   F. Supp. 2d 1379 (J.P.M.L. 2010)....................................................................................... 7
*King et al. v. General Motors LLC et al*., Case No. 2:24-cv-02560 (C.D. Cal.) ........................... 5
*Landman v. General Motors, LLC, et al*., Case No. 1:24-cv-02238 (S.D.N.Y.) ........................... 5
*Mason v. General Motors, LLC, et al*., Case No. 24-cv-01558 (N.D. Ga.)................................... 5
*Milisits v. FCA US LLC*, Case No. 20-cv-11578 (E.D. Mich.).................................................. 13

*Raymo v. FCA US LLC*, Case No. 17-cv-12168 (E.D. Mich.)........................................................ 12
*Reed et al. v. General Motors, et al.*, Case No. 2:24-cv-10804 (E.D. Mich.) .............................. 5
*Speerly v. Gen. Motors, LLC*, Case No. 19-cv-11044 (E.D. Mich.)............................................ 12
*Thongsawang v. General Motors, LLC et al.*, Case No. 8:24-00695 (C.D. Cal.)......................... 5
*Ulrich, et al. v. General Motors LLC*, Case No. 2:24-cv-11007 (E.D. Mich.)............................. 5
*Valencia v. General Motors, LLC et al.*, Case 2:24-cv-02978 (C.D. Cal.).................................. 5
*Vaughn v. Kia America, Inc., et al.*, Case No. 2:24-cv-01473 (E.D. Pa.)..................................... 5

**Statutes**

15 U.S.C. § 1681 ........................................................................................................................ 3
28 U.S.C. § 1404(a) .................................................................................................................. 13
28 U.S.C. § 1407...................................................................................................................13, 14
28 U.S.C. § 1407(a) .................................................................................................................... 1

**Other Authorities**

MANUAL FOR COMPLEX LITIG. § 20.131 (4th ed. 2004) ............................................................. 4
MANUAL FOR COMPLEX LITIG. § 22.33 ................................................................................10, 11

**Rules**

Fed. R. Civ. P. 45(c) ................................................................................................................... 9

Plaintiffs Larry Reed, Darnell McCoy, Sr., Suzanne Block, and Charles Justus, III (collectively, "Reed Plaintiffs"), by and through their undersigned counsel, respectfully submit this memorandum of law in response to Plaintiff Jariya Thongsawang's Motion for Transfer and Centralization Pursuant to 28 U.S.C. §1407 ("Motion" or "Mot.") (ECF No. 1). As discussed herein, Reed Plaintiffs agree that transfer and centralization into a single district court is appropriate; however, the United States District Court for the Eastern District of Michigan is the most appropriate transferee court.

## ARGUMENT

## I.     Transfer and Centralization Are Appropriate

The Related Actions[1] should be transferred and consolidated or coordinated for pretrial proceedings. Under 28 U.S.C. § 1407(a), the Panel may transfer and consolidate cases that meet three requirements: (1) the cases "involv[e] one or more common questions of fact"; (2) transfer and consolidation or coordination will further "the convenience of parties and witnesses"; and (3) transfer and consolidation or coordination "will promote the just and efficient conduct of [the] actions." Transfer to and centralization in the Eastern District of Michigan satisfies each.

### A.     The Related Actions Involve Common Questions of Fact.

The Panel consistently holds that cases involving overlapping factual issues are particularly appropriate for transfer and consolidation or coordination. At least twelve cases relating to the collection, dissemination, and sale of consumer driving data without informed consent have been filed across the United States, and more may be filed in the coming days. Each of the underlying complaints shares a common core of operative factual allegations, including:

- Defendants failed to disclose their data collection, dissemination, and sale practices;

---

[1] *See* footnotes 2 and 3.

- Defendants unlawfully collected and stored vehicle-driving data of class members through telematics systems installed in GM-manufactured vehicles;

- Defendants unlawfully transmitted or sold class members' vehicle-driving data to unauthorized third parties without the class members' proper consent;

- Plaintiffs and class members were injured by Defendants' conduct and are entitled to a determination of the appropriate class-wide measure of damages;

- Plaintiffs and class members are entitled to injunctive relief, among other things, and the nature and extent of such relief needs to be determined.

The similarity of claims among the lawsuits filed means that any court assigned to handle one of these cases must address the same key factual issues across all cases. Regardless of the specific legal claims made, the outcome of each case filed thus far will likely depend on two fundamental factual questions: (1) whether Defendants disclosed their data collection, dissemination, and sales practices to Plaintiffs and class members; and (2) whether Defendants unlawfully transmitted or sold vehicle-driving data of Plaintiffs and class members to unauthorized third parties without their proper consent. These two core factual issues—individually or in combination—compel centralization under § 1407(a) for the sake of efficiency and the avoidance of "inconsistent rulings." *In re Insulin Pricing Litig.*, MDL No. 3080, 2023 WL 9290540, at *4 (J.P.M.L. Dec. 6, 2023).

**B.     Centralization Will Be More Convenient for the Parties and Witnesses.**

Centralization of these Actions will save Plaintiffs and Defendants the burden of prosecuting and defending competing and overlapping class actions in multiple federal district courts across the country.

For example, because the Actions are premised on the collection and dissemination of consumer driving data without informed consent, and seek legal relief grounded in common legal

- 2 -

theories, they will require essentially the same discovery from each Defendant, including: (1) all internal communications regarding the design, implementation, and oversight of the telematics systems used in GM-manufactured vehicles; (2) documents detailing the policies and procedures for collecting, storing, transmitting, and selling consumer driving data, including any consent forms presented to customers; (3) agreements and correspondence between the Defendants related to the sharing, sale, or analysis of consumer driving data; (4) documents illustrating the types of data collected by Defendants' telematics systems and how this data is processed and stored; (5) marketing materials and consumer disclosures regarding telematics services and data collection practices; and (6) financial records indicating sources of revenue and revenue generated from the sale or use of consumer driving data. Without consolidation, Plaintiffs would be required to issue, and Defendants would be required to respond to, multiple and duplicative discovery requests seeking the same information, and key witnesses would be required to sit for numerous, and duplicative, depositions. *In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d 1372, 1375 (J.P.M.L. 2021) ("Centralization will promote the just and efficient conduct of the litigation by eliminating duplicative discovery"). Finally, in addition to being more convenient for the parties and witnesses, centralization will also optimize judicial efficiency. This approach allows a single judge to oversee nearly identical claims among the same parties, developing a cohesive pre-trial strategy that reduces costs for everyone involved. *See In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, 598 F. Supp. 2d 1366, 1367 (J.P.M.L. 2009) (consolidation would "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary"). Therefore, transfer and centralization for consolidated or coordinated pretrial proceedings is appropriate to accommodate the convenience of parties and witnesses.

### C.      Centralization Will Promote the Just and Efficient Conduct of the Related Actions.

Transfer and centralization will promote the just and efficient conduct of the Related Actions because it will eliminate the possibility of conflicting pretrial rulings. Plaintiffs assert many of the same claims—violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*, and consumer protection statutes—and inconsistent rulings could result if different courts address these claims. *See In re Terrorist Attacks on Sept. 11, 2001*, 295 F. Supp. 2d 1377, 1378 (J.P.M.L. 2003) (noting that transfer is favored where there are overlapping legal issues among the various cases). Dispositive motions and motions for class certification will also require the resolution of virtually the same issues of fact and law.

The risk of conflicting pretrial rulings is exceptionally high here due to the current and potential number of competing and overlapping putative nationwide classes. *See In re Plumbing Fixture Cases*, 298 F. Supp. 484, 493 (J.P.M.L. 1968) ("[It] is in the field of class action determinations in related multidistrict civil actions that the potential for conflicting, disorderly, chaotic judicial action is the greatest"); *see also In re Imagitas, Inc., Drivers' Privacy Prot. Act Litig.*, 486 F. Supp. 2d 1371, 1372 (J.P.M.L. 2007) (centralizing actions that contained "competing class allegations"); *In re IDT Corp. Calling Card Terms Litig.*, 278 F. Supp. 2d 1381, 1381 (J.P.M.L. 2003) (centralizing actions that involved "overlapping putative class actions").

Lastly, it is likely that the number of Related Actions in multiple jurisdictions will only continue to increase. Ordering transfer and consolidation at this early stage will allow this complex litigation to proceed in a coordinated and efficient manner.

## II.      The Eastern District of Michigan Is By Far the Most Appropriate Transferee Court.

Reed Plaintiffs respectfully submit that the United States District Court for the Eastern District of Michigan is—by far—the most appropriate forum for this Action. In choosing an

- 4 -

appropriate transferee forum, this Panel often considers (1) "where the largest number of cases is pending, [(2)] where discovery has occurred, [(3)] where cases have progressed furthest, [(4)] the site of the occurrence of the common facts, [(5)] where the cost and inconvenience will be minimized, and [(6)] the experience, skill, and caseloads of available judges." MANUAL FOR COMPLEX LITIG. § 20.131 (4th ed. 2004); *see also id.* § 22.33 ("[T]he Panel looks for an available and convenient transfer forum, usually one that (1) is not overtaxed with other MDL cases, (2) has a related action pending on its docket, (3) has a judge with some degree of expertise in handling the issues presented, and (4) is convenient to the parties.").

### A.    Factor 1: The Eastern District of Michigan Has the Largest Number of Cases.

The Eastern District of Michigan currently has four Actions pending; more than the Central District of California or any other proposed District in *this* potential MDL, supporting transfer to the Eastern District of Michigan.[2][3] As further discussed below, in comparing the Eastern District

---

[2] As of April 26, 2024, the following four Actions are pending in the Eastern District of Michigan: *Reed et al. v. General Motors, et al.* (Case No. 2:24-cv-10804); *Block et al. v. General Motors, LLC et al.* (Case No. 2:24-cv-10824); *Carnine et al. v. General Motors, LLC et al.* (Case No. 4:24-cv-11004); and *Cogle v. General Motors LLC, et al.* (Case No. 2:24-cv-11062). The Central District of California has three Actions pending: *Thongsawang v. General Motors, LLC et al.* (Case No. 8:24-cv-00695); *King et al. v. General Motors LLC et al.* (Case No. 2:24-cv-02560); and *Valencia v. General Motors, LLC et al.* (Case 2:24-cv-02978). The Northern District of Georgia has two Actions pending: *Mason v. General Motors, LLC, et al.* (Case No. 1:24-cv-01558); and *Figlio, et al. v. General Motors LLC, et al.* (Case No. 1:24-cv-01669). The Southern District of Florida (*Chicco v. General Motors LLC, et al.*, Case No. 9:24-cv-80281), The Southern District of New York (*Landman v. General Motors, LLC, et al.*, Case No. 1:24-cv-02238), and the Middle District of Pennsylvania (*Dinardo v. General Motors, LLC, et al.*, Case No. 3:24-cv-00524) each have one Action pending.

[3] On April 24, 2024, Plaintiff Thongsawang filed a Notice of Related Actions listing three cases. *See* ECF No. 41. However, this Notice contains two cases, *Vaughn v. Kia America, Inc., et al.*, Case No. 2:24-cv-01473 (E.D. Pa.) and *Ulrich, et al. v. General Motors LLC*, Case No. 2:24-cv-11007 (E.D. Mich.), that should not be considered for centralization and transfer on the present Motion. The *Vaughn* complaint, which Plaintiff Landman also briefly discusses in her Response to Plaintiff Thongsawang's Motion (*see* ECF No. 15), contains no allegations against General Motors, LLC (the Defendant common to all twelve cases cited in footnote 1 above) or OnStar LLC

of Michigan with the Central District of California, all of the other Related Actions are filed in the Eastern Time Zone, and they are each venued much closer to the Eastern District of Michigan. As such, this factor favors the Eastern District of Michigan. *See, e.g.*, *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litig.*, 338 F. Supp. 3d 1347, 1349 (J.P.M.L. 2018) ("The majority of actions are concentrated in **or near this district**, and it is conveniently located for this nationwide litigation.") (emphasis added); *In re Personalweb Techs., LLC, and Level 3 Commc'ns, LLC, Patent Litig.*, 340 F. Supp. 3d 1373, 1374-75 (J.P.M.L. 2018) ("The majority of the cases are pending in this district, and numerous defendants are based there."); *In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.*, 190 F. Supp. 3d 1361, 1363 (J.P.M.L. 2016) (selecting district because "***[t]he majority of the actions in this litigation are pending in the central United States***," the defendant was headquartered nearby, "which is where significant and common documentary and testimonial evidence likely will be located" and finding that "although this litigation is nationwide in scope, its **center of gravity is in the central portion of the country**.") (emphasis added).

   **B.    Factors 2 and 3 Are Neutral.**

   As discovery has not yet commenced in any of the Actions, nor has any Action progressed in a meaningful manner, the second and third factors are neutral.

---

and, naturally, contains wholly distinct facts and allegations against a separate car manufacturer with an entirely different system of tracking driver behavior than the OnStar system, which was utilized by General Motors. Any non-GM OEM case presents different parties that will involve inherently different discovery and allegations and make centralization with the General Motors and OnStar Defendant cases inefficient and improper. Second, the *Ulrich* case is a transmission defect class action and has nothing to do with data privacy or any of the allegations at issue in the matter before the Panel. A cursory review of the introductory paragraphs of the 351-page complaint reveals the same and the *Ulrich* complaint should be stricken from any schedule of related cases. *See* ECF Nos. 41, 41-1, 41-5.

**C.     Factors 4 and 5: The Site of the Occurrence of the Common Facts and Where Cost and Inconvenience Will be Minimized Favors the Eastern District of Michigan.**

The Eastern District of Michigan is the locus of key events and witnesses. None of the other fora in which the actions are pending possess a comparable evidentiary nexus or relevant business presence. Most notably, the Eastern District of Michigan is where GM is headquartered and conducts the majority of its business, including research and development, engineering, testing, and marketing and sales. The same is true for GM's wholly-owned subsidiary OnStar.

Thus, the only two Defendants common to every Action (GM and OnStar) are headquartered in the Eastern District of Michigan. As such, many, if not most, of the key witnesses and much of the evidence in this case will be located in the Eastern District of Michigan, making it the most convenient to host this MDL. *See, e.g.*, *In re: Samsung Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1368 (J.P.M.L. 2023) (transferring the data breach cases to the district where the defendant was headquartered, where common witnesses and other evidence were likely to be found).

Indeed, even in the electronic age (which Plaintiff Thongsawang trumpets), the Panel typically transfers actions brought against vehicle manufacturers to the forum where the principal defendant resides precisely because of the forum's evidentiary nexus to the litigation. *See, e.g.*, *In re Gen. Motors Corp. Sec. & Derivative Litig.*, 429 F. Supp. 2d 1368, 1370 (J.P.M.L. 2006) (centralizing five actions in the Eastern District of Michigan and finding it to be "an appropriate forum" because the "district is where many relevant documents and witnesses are likely to be found, inasmuch as GM's principal place of business is located there"); *In re: Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., Prod. Liab. Litig.*, 704 F. Supp. 2d 1379, 1382 (J.P.M.L. 2010) (transferring to the district where automobile manufacturer defendant maintains its corporate headquarters because "relevant documents and witnesses are likely located there");

*In re Ford Motor Co. Speed Deactivation Switch Prod. Liab.*, 398 F. Supp. 2d 1365, 1367 (J.P.M.L. 2005) (consolidating and transferring the case to the Eastern District of Michigan where the automobile-manufacturer defendant was headquartered and, thus, where relevant documents and witnesses likely were located).

Moreover, the Eastern District of Michigan would be a convenient and easily accessible location for the few parties, witnesses, and lawyers not located within the District. Cost and inconvenience will also be minimal as the Eastern District of Michigan has the infrastructure to accommodate out-of-town lawyers, parties, and witnesses. All parties would have easy access to the Eastern District of Michigan through multiple international airports, including Detroit Metropolitan Airport, a less than thirty minute commute to the doors of the Theodore Levin United States Courthouse, among other regional airports which serve millions of passengers every year, while avoiding capacity issues that other airports suffer from. And a recent traffic index rating ranked Detroit as one of the best cities in the United States of comparable size in its traffic congestion rating, and, moreover, Detroit has many adequate and affordable hotel rooms within a short walking distance of the courthouse. These facts make the Eastern District of Michigan well-suited to host this MDL. *See In re Rio Hair Naturalizer Prod. Liab. Litig.*, 904 F. Supp. 1407, 1408 (J.P.M.L. 1995) (finding the Eastern District of Michigan the appropriate transferee forum, in part, because it "provides a geographically central location for this nationwide litigation"); *In re Upjohn Co. Antibiotic "Cleocin" Prod. Liab Litig*, 450 F. Supp. 1168, 1171 (J.P.M.L. 1978) ("in the context of the actions presently before us, the Eastern District of Michigan is in a geographically central and convenient location").

Indeed, a glance at a map of the locations of the currently filed cases and parties to them makes clear that the Eastern District of Michigan is far superior to the Central District of

California. *See* Exhibit A, below. The average distance that would need to be traveled by the various parties already on file to the Central District of California is ***1,300 miles more*** than to the Eastern District of Michigan (1,006 miles to Detroit versus 2,293 miles to Los Angeles). Similarly, the average distance a Defendant would have to travel to Los Angeles is more than ***ten times*** the distance a Defendant would have to travel to Detroit (224 miles versus 2,283 miles).

<u>**Exhibit A**</u>



Plaintiff Thongsawang's Motion glosses over the relatively isolated nature of the Central District of California, claiming that "[w]ith electronic discovery predominating, the site of the occurrence is less important," and the parties can "cooperate to take depositions at a place that is convenient for each of the witnesses." Mot. at 15-16. However, they overlook the critical fact that the Eastern District of Michigan has personal jurisdiction over two of the three named defendants in these Actions, thus allowing the MDL transferee judge who manages all pretrial proceedings to

preside over trial instead of the cases all being remanded under *Lexecon* to their transferor courts for individual state class trials. Further, venue in the Eastern District of Michigan affords Plaintiffs the ability to subpoena critical nonparty witnesses to testify live at trial under Fed. R. Civ. P. 45(c), including employees of GM and other third-party suppliers who otherwise may reside beyond a transferee court's subpoena power.[4] Reed Plaintiffs would be prejudiced if they cannot present live testimony from non-party witnesses at trial.

### D.   Factor 6: The Experience, Skill, and Caseloads of Available Judges Favors the Eastern District of Michigan.

Metropolitan Detroit, located within the Eastern District of Michigan, is known as the world's automotive center, in large part due to virtually every major global automaker having a presence in the area, and it serves as the headquarters for General Motors (a Defendant in each of the Actions, and manufacturer of Chevrolet, GMC, Cadillac, and Buick), Ford Motor Company (Ford and Lincoln), and Stellantis North America (Chrysler, Dodge, Jeep, and Ram). As such, the Eastern District of Michigan is perhaps home to more multi-state vehicle-related class actions than any other federal district court, providing it with a high "degree of expertise in handling the issues presented," including the corporate structure and internal workings of those companies. MANUAL FOR COMPLEX LITIG. § 22.33; *see also In re Wireless Telephone Radio Frequency Emissions Prods. Liab. Litig.*, 170 F. Supp. 2d 1356, 1358 (J.P.M.L. 2001) (assigning case to a specific judge because she "already has relevant experience with some issues likely involved in this litigation.").

---

[4]   As the Panel knows, Michigan is the worldwide epicenter of the automotive industry with the world's largest concentration of automotive engineering expertise. Michigan has world-class universities with programs and research centers focused on the automotive industry, and 65 of the top 100 automotive suppliers to North America are headquartered in Michigan (and 98 of these 100 have a presence in Michigan). *See* Detroit Regional Chamber, Michigan is Automobility, https://www.detroitchamber.com/research/michigan-is-automobility-report/ (last visited Apr. 12, 2024). As such, the vast majority of potential non-party witnesses are located within the subpoena power of the Eastern District of Michigan.

Regarding overall civil caseloads, the Eastern District of Michigan is likewise the best situated of any of the proposed transferee districts. According to the Administrative Office of the U.S. Courts' December 2023 Federal Court Management Statistics, the Eastern District of Michigan has the lowest number of weighted filings per judge of any of the federal district courts in which an Action is pending, and it is not even close.[5] Although Plaintiff Thongsawang's Motion points to the median time from filing to disposition for civil cases in the Central District of California being lower than that of the Eastern District of Michigan, closing cases *faster* does not necessarily mean adjudicating them *better*, nor does disposition time of the median case have much to do with how long pretrial proceedings in this complex class action can be expected to take.[6]

With respect to currently pending MDLs specifically, among the potential options where Actions are presently pending, the Eastern District of Michigan "is not overtaxed with other MDL cases," MANUAL FOR COMPLEX LITIG. § 22.33, and in fact, has the second-fewest pending MDLs. Furthermore, of the five currently pending MDLs in the Eastern District of Michigan, three are

---

[5]   https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/12/31-1 (showing Eastern District of Michigan with 275 weighted cases per judge; Central District of California with 616; Southern District of New York with 535; Southern District of Florida with 1,085; and Middle District of Pennsylvania with 425). The same report also reveals that the Eastern District of Michigan has the second-lowest overall caseload per judge, only above the Southern District of Florida, whose weighted cases per judge is nearly three times higher due to the extremely labor-intensive nature of their cases. *See id.* (showing Eastern District of Michigan with 333 cases per judge; Central District of California with 484; Southern District of New York with 638; Southern District of Florida with 310; and Middle District of Pennsylvania with 606).

[6]   Moreover, Plaintiff Thongsawang ignores the fact that the Central District of California has an extraordinarily high number of cases overall—10,610—as opposed to the Eastern District of Michigan, which only has 3,745. *See* https://www.uscourts.gov/statistics/table/c/statistical-tables-federal-judiciary/2023/12/31.

largely completed in terms of MDL proceedings, suggesting that now is the time for another.[7] As such, this factor heavily favors the Eastern District of Michigan as well.

E.     **The Above Factors Overwhelmingly Favor the Eastern District of Michigan.**

Of the four relevant factors, each weighs strongly in favor of the Eastern District of Michigan, especially when compared to the Central District of California.

Putting aside the irony that the Eastern District of Michigan is the automobile capital of the world, while Los Angeles is one of America's "traffic" capitals,[8] the Central District of California is an average of **2,283 *miles*** from the defendants' headquarters (and even further for the plaintiffs whose Actions are pending in Florida, New York, and Pennsylvania), while the steps of the Detroit federal courthouse is barely **2,283 *feet*** from GM and OnStar's headquarters.

And crucially, the caseloads and the status of the currently-pending MDLs strongly militate in favor of sending this MDL to the Eastern District of Michigan.

III.   **The Eastern District of Michigan Has Outstanding Jurists With Ample Complex Auto Litigation Experience Who Will Efficiently and Effectively Manage the Consolidated Litigation.**

The Eastern District of Michigan has an abundance of eminently qualified transferee judges. While any of the potential transferee judges in the District, including Jonathan J.C. Grey,

---

[7]     *See In re Automotive Parts Antitrust Litig.*, MDL No. 2311 (E.D. Mich.) (case ostensibly settled with no substantive docket activity since May 2023); *In re FCA US LLC Monostable Electronic Gearshift Litig.*, MDL No. 2744 (E.D. Mich.) (Panel issued conditional remand order on March 27, 2024 noting pretrial proceedings completed and remand to transferor courts appropriate); *In re General Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, MDL No. 2818 (E.D. Mich.) (motion for class certification fully briefed and held in abeyance pending Sixth Circuit's decision in two other automobile defect class certification appeals). Also of note is that four of the five pending Eastern District of Michigan MDLs involve automobiles.

[8]     *LA Area Ranks 6th on List of Most Traffic-Congested Cities*, CBS News (Dec. 7, 2021), https://www.cbsnews.com/losangeles/news/la-most-traffic-congested-cities/ (last visited Apr. 16, 2024).

would help steer this litigation on a prudent and efficient course, three other judges—David M. Lawson, Matthew F. Leitman, and Terrence G. Berg—are experienced MDL transferee judges who have a track record of managing complex cases involving national car companies.

Judge Lawson was nominated to the bench by President Clinton and unanimously confirmed. He has served as a District Judge for 24 years, managing countless complex cases from the heart of America's automotive industry. He currently presides over *In re FCA US LLC Monostable Elec. Gearshift Litig.*, MDL No. 2744 (E.D. Mich.) (pretrial proceedings completed and remand order entered), and *In re Chrysler Pacifica Fire Recall Prod. Liab. Litig.*, MDL 3040 (E.D. Mich.). In addition, he presides over the nationwide class action *Speerly v. Gen. Motors, LLC*, No. 19-cv-11044 (E.D. Mich.). Judge Lawson is one of the few judges in the nation that has presided over a multi-state automotive defect class action trial, which occurred in the *FCA Monsostable* MDL.

Judge Berg was nominated to the federal bench by President Obama and unanimously confirmed. He now has twelve years of experience as a District Judge. He has efficiently managed numerous class cases against automotive manufacturers, including *In re Chevrolet Bolt EV Battery Litig.*, No. 20-cv-13256 (E.D. Mich.); *Chapman v. Gen. Motors, LLC*, No. 19-cv-12333 (E.D. Mich.); and *Raymo v. FCA US LLC*, No. 17-cv-12168 (E.D. Mich.). Prior to his appointment, he gained extensive experience as a federal prosecutor, serving as an Assistant U.S. Attorney in the Eastern District of Michigan beginning in 1989, eventually specializing in complex fraud cases and computer and internet crimes. His background in technical areas continued when, in 1999, Michigan Attorney General Jennifer Granholm appointed him as Chief of the Attorney General's High Tech Crime Unit to respond to the emerging problem of internet crime. Further, he has

experience as an MDL transferee judge and is currently presiding over the *In re Neo Wireless, LLC, Patent Litig.*, MDL No. 3034 (E.D. Mich.).

Judge Leitman has ten years of experience as a District Judge. He has earned a reputation for efficiently managing complex cases and has an extensive background in civil litigation prior to being appointed to the bench. Since 2018, he has presided over *In re General Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, MDL No. 2818 (E.D. Mich.) (nearing end of MDL proceedings), and also currently presides over other class action cases against automotive manufacturers, including *Fisher v. FCA US LLC*, No. 23-cv-10426 (E.D. Mich.), and *Milisits v. FCA US LLC*, No. 20-cv-11578 (E.D. Mich.).

**IV.    Given the Small Number of Related Actions, Section 1404(a) Transfer to the Eastern District of Michigan Would Be an Appropriate Alternative to Section 1407 Centralization.**

In light of the Court's directive to explore alternatives to centralization under 28 U.S.C. § 1407, a transfer under Section 1404(a) to the Eastern District of Michigan emerges as a suitable alternative. This strategy directly aligns with the statute's stipulation: facilitating the convenience of parties and witnesses and advancing the interests of justice. *See* 28 U.S.C. § 1404(a). Given the manageable number of current Related Actions—twelve as of the date of this filing—the Eastern District of Michigan represents an optimal venue. As discussed above, it is not only geographically accessible and convenient to the involved parties and crucial witnesses but also boasts a judiciary experienced in overseeing complex vehicle-related class actions. Accordingly, the Eastern District of Michigan stands out as the most fitting venue for these actions, offering a pathway that squarely meets the Court's request for an alternative to centralization that is both pragmatic and just.

**CONCLUSION**

For the foregoing reasons, Reed Plaintiffs respectfully request that, pursuant to 28 U.S.C. § 1407, the Panel order the transfer and centralization of these Actions (and any future tag-along actions), for coordinated or consolidated pretrial proceedings to the United States District Court for the Eastern District of Michigan.

DATED:  April 26, 2024

**THE MILLER LAW FIRM, P.C.**
E. POWELL MILLER (P39487)
EMILY E. HUGHES (P68724)
DENNIS A. LIENHARDT (P81118)

*/s/ E. Powell Miller*
E. Powell Miller
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: 248/841-2200
248/652-2852 (fax)
epm@millerlawpc.com
eeh@millerlawpc.com
dal@millerlawpc.com

*Counsel for Plaintiffs Larry Reed, Darnell McCoy, Sr., Suzanne Block, and Charles Justus, III.*

**TYCKO & ZAVAREEI LLP**
SABITA J. SONEJI
HASSAN ZAVAREEI

CORT CARLSON
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: 510/254-6808
Hzavareei@tzlegal.com
ssoneji@tzlegal.com
ccarlson@tzlegal.com

**KOPELOWITZ OSTROW P.A.**
JEFF OSTROW
STEVEN SUKERT
One West Law Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954/332-4200
ostrow@kolawyers.com
sukert@kolawyers.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
GARY KLINGER
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: 866/252-0878
gklinger@milberg.com

*Counsel for Plaintiffs Larry Reed and Darnell McCoy, Sr.*


**ROBBINS GELLER RUDMAN & DOWD LLP**
STUART A. DAVIDSON
ALEXANDER C. COHEN
FACUNDO M. SCIALPI
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
acohen@rgrdlaw.com
fscialpi@rgrdlaw.com

**WITES & ROGERS, P.A.**
MARC A. WITES
4400 North Federal Highway
Lighthouse Point, FL 33064
Telephone: 954/933-4400
954/4354-0205 (fax)
mwites@wklawyers.com

*Counsel for Plaintiffs Suzanne Block and Charles Justus, III*

**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: CONSUMER VEHICLE DRIVING DATA TRACKING LITIGATION | MDL No. 3115 |

**PROOF OF SERVICE**

In accordance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, the undersigned hereby certifies that on April 26, 2024, a copy of the foregoing document was electronically filed with the Clerk of the Court through the CM/ECF system, which will send notification of such filing to all counsel of record who are registered as CM/ECF users, as denoted on the Electronic Mail Notice List.

I further certify that on April 26, 2024, I caused the foregoing to be served in the manner described below:

| *Cogle, et al. v General Motors, et al.*, Case No. 2:24-cv-11062-JJCG-APP (E.D. MI) | |
|---|---|
| *Via ECF*<br><br>**Plaintiffs' Counsel:**<br><br>Adam E. Polk<br>Jordan Elias<br>Anthony Rogari<br>GIRARD SHARP LLP<br>601 California Street, Suite 1400<br>San Francisco, CA 94108<br>Tel: 415-981-4800<br>Fax: 415-981-4846<br>apolk@girardsharp.com<br>jelias@girardsharp.com<br>arogair@girardsharp.com | |

| *Carnine, et al. v. General Motors, et al.*, Case No. 4:24-cv-11004-SDK-CI (E.D. Mich.) | |
|---|---|
| *Via ECF*<br><br>**Plaintiffs' Counsel:**<br><br>Amber L. Schubert<br>**SCHUBERT JONCKHEER &**<br>**KOLBE LLP**<br>2001 Union St, Ste 200<br>San Francisco, CA 94123<br>Telephone: (415) 788-4220<br>Facsimile: (415) 788-0161<br>Email: aschubert@sjk.law | |

| *Chicco v. General Motors, et al.*, Case No. 9:24-cv-80281-DMM (S.D. Fla.) | |
|---|---|
| *Via ECF*<br><br>**Plaintiff's Counsel:**<br><br>Abbas Kazerounian<br>**KAZEROUNI LAW GROUP, APC**<br>245 Fischer Ave., Suite D1<br>Costa Mesa, CA 92626<br>Telephone: (800) 400-6808<br>Facsimile: (800) 520-5523<br>Email: ak@kazlg.com | |

| *Valencia v. General Motors, et al.*, Case No. 2:24-cv-02978-MEMF (C.D. Cal.) | |
|---|---|
| *Via Electronic Mail*<br><br>**Plaintiff's Counsel:**<br><br>Arthur Petrousian<br>**MORGAN & MORGAN**<br>633 W 5th St, Ste 2200<br>Los Angeles, CA, 90071-2041<br>Telephone: (213) 787-8590<br>Email: apetrousian@forthepeople.com<br><br>John A. Yanchunis<br>Ronald Podolny<br>**MORGAN & MORGAN**<br>201 North Franklin Street 7th Floor<br>Tampa, FL 33602 | |

| | |
|---|---|
| Telephone: (813) 223-5505<br>Facsimile: (813) 223-5402<br>Email: JYanchunis@forthepeople.com<br>Email: ronald.podolny@forthepeople.com<br><br>John G. Emerson<br>**EMERSON FIRM, PLLC**<br>2500 Wilcrest Drive, Suite 300<br>Houston, TX 77042-2754<br>Telephone: (800) 551.8649<br>Facsimile: (501)286-4659<br>Email: jemerson@emersonfirm.com | |
| ***Dinardo v. General Motors, et al.,* Case No. 3:24-cv-00524-JKM (M.D. Penn.)** | |
| *Via ECF*<br><br>**Plaintiff's Counsel:**<br><br>Ruben Honik<br>**HONIK LLC**<br>1515 Market Street, Suite 1100<br>Philadelphia, PA 19102<br>Telephone: 267-435-1300<br>Email: ruben@honiklaw.com | |
| ***Figlio, et al. v. General Motors, et al.,* Case No. 1:24-cv-01669-TWT-JEM (N.D. GA)** | |
| *Via ECF*<br><br>**Plaintiffs' Counsel:**<br><br>Gary S. Graifman<br>**KANTROWITZ GOLDHAMER &<br>GRAIFMAN, P.C.**<br>135 Chestnut Ridge Rd., Suite 200<br>Montvale, NJ 07645<br>Telephone: (201) 391-7000<br>Email: ggraifman@kgglaw.com | |

| ***Thongsawang v. General Motors, et al.*, Case No. 8:24-cv-00695-AB-DFM (C.D. Cal.)** | |
|---|---|
| *Via ECF*<br><br>**Plaintiff's Counsel:**<br><br>Tina Wolfson<br>**AHDOOT & WOLFSON, P.C.**<br>2600 W. Olive Avenue, Suite 500<br>Burbank, California 91505-4521<br>Telephone: (310) 474-9111<br>Facsimile: (310) 474-8585<br>Email: twolfson@ahdootwolfson.com | |
| ***Mason v. General Motors, et al.*, Case No. 1:24-cv-01558-TWT-JEM (N.D. Ga.)** | |
| *Via ECF*<br><br>**Plaintiff's Counsel:**<br><br>Bryan L. Clobes<br>**CAFFERTY CLOBES MERIWETHER &<br>SPRENGEL LLP**<br>135 South LaSalle Street, Suite 3210<br>Chicago, IL 60603<br>Telephone: (312) 782-4880<br>Email: bclobes@caffertyclobes.com | |
| ***King, et al. v. General Motors, et al.*, Case No. 2:24-cv-02560-ODW-MAA (C.D. Cal.)**<br>***Landman v. General Motors, et al.*, Case No. 1:24-cv-02238-RA (S.D.N.Y.)** | |
| *Via ECF*<br><br>**Plaintiffs' Counsel:**<br><br>Jonathan R. Gdanski<br>**SCHLESINGER LAW OFFICES, P.A.**<br>1212 SE Third Avenue<br>Fort Lauderdale, Florida 33317<br>Telephone: (954)467-8800<br>Email: jonathan@schlesingerlaw.com | |

| ***Vaughn v. Kia America, Inc., et al*, Case No. 2:24-cv-01473 (E.D. Pa.)** | |
|---|---|
| *Via ECF*<br><br>**Plaintiffs' Counsel:**<br><br>Ruben Honik<br>David J. Stanoch, Of Counsel<br>HONIK LLC<br>1515 Market Street, Suite 1100<br>Philadelphia, PA 19102<br>ruben@honiklaw.com<br>david@honiklaw.com | |
| ***Defendants*** | |
| *Via ECF*<br><br>David L. Balser<br>**KING & SPALDING**<br>1180 Peachtree Street, N.E.<br>Atlanta, GA 30309<br>Telephone: (404) 572-4600<br>Facsimile: (404) 572-5100<br>Email: dbalser@kslaw.com<br><br>*Counsel for Defendants General Motors LLC and OnStar, LLC* | |
| *Via ECF*<br><br>Ronald I. Raether, Jr.<br>**TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>5 Park Plaza #1400<br>Irvine, CA 92614<br>Telephone: (946) 622-2722<br>Facsimile: (949) 769-2080<br>Email: ron.raether@troutman.com<br><br>*Counsel for Defendant LexisNexis Risk Solutions Inc.* | |

Respectfully submitted,

By: */s/ E. Powell Miller*
E. Powell Miller (P39487)
Emily E. Hughes (P68724)
Dennis A. Lienhardt (P81118)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, Michigan 48307
(248) 841-2200
epm@millerlawpc.com
eeh@millerlawpc.com
dal@millerlawpc.com

*Counsel for*
*Plaintiff Suzanne Block and Charles Justus, III; Case*
*No. 24-10824 (E.D. MI)*
*Plaintiff Larry Reed and Darnell McCoy; Case No.*
*24-10804 (E.D. MI)*