BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| In re: Consumer Vehicle Driving Data Tracking Litigation | MDL No. 3115 |
|---|---|

**DEFENDANTS GENERAL MOTORS LLC'S AND ONSTAR, LLC'S RESPONSE TO MOTION OF PLAINTIFF JARIYA THONGSAWANG FOR TRANSFER AND CENTRALIZATION PURSUANT TO 28 U.S.C. § 1407**

Defendants General Motors LLC ("GM") and OnStar, LLC ("OnStar") (collectively, the "GM Defendants"), submit this Response to the Motion for Transfer and Centralization under 28 U.S.C. § 1407 filed with the Judicial Panel on Multidistrict Litigation ("JPML" or the "Panel") by Plaintiff in *Thongsawang v. General Motors LLC et al.,* Case No. 8:24-cv-00695 (C.D. Cal. March 29, 2024); *see also* Dkt. 3 (U.S. Jud. Pan. Lit. April 9, 2024). GM Defendants support transfer and consolidation, but respectfully submit that the Eastern District of Michigan, where GM and OnStar are headquartered and where relevant documents and witnesses are located, is the most appropriate district and is well-equipped to handle an MDL of this nature.[1]

**I.   INTRODUCTION**

To date, fourteen (14) putative class actions have been filed in six (6) different federal district courts challenging Defendants' alleged collection and disclosure of certain driving data from customer vehicles. All Plaintiffs allege that they purchased a GM-manufactured vehicle and that their driving data was collected through OnStar and shared with consumer reporting agencies, like co-Defendant LexisNexis Risk Solutions, Inc. ("Lexis"). Plaintiffs allege they did not consent to the collection and sharing of such data and that disclosure of the data prevented them from

---

[1] GM Defendants expressly reserve and assert all of their contractual defenses, including, without limitation, their arbitration defenses and right to move to compel arbitration, and their class action waivers, whether in the individual actions or in any centralized proceeding ordered by the JPML.

obtaining car insurance or resulted in higher premiums. The actions contain similar claims, including 1) violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.,* 2) violations of various consumer protection statutes, 3) invasion of privacy, 4) unjust enrichment, and 5) violations of state and federal wiretapping statutes. Plaintiffs also seek to assert these claims on behalf of various state and nationwide classes. The actions, therefore, seek the same or similar relief, from the same defendants, on behalf of the same consumers.

In light of the number of parallel putative class actions already filed and the number of different courts in which the actions are pending, transfer and consolidation is warranted. The Panel has consistently held that centralized litigation is proper for overlapping class actions premised on the same underlying facts. GM Defendants agree with Plaintiff Thongsawang that the JPML should follow its well-reasoned precedent and establish an MDL proceeding for all cases involving allegations regarding GM Defendants' collection, use, and disclosure of consumers' vehicle driving data.[2] Doing so would facilitate "the convenience of [the] parties and witnesses and … promote the just and efficient conduct of [the] actions" as a whole. 28 U.S.C. § 1407(a).

---

[2] Plaintiff Thongsawang's Motion for Transfer and Centralization makes a passing reference that, while "Plaintiff is not aware of any lawsuits against other manufacturers, [i]n the event that lawsuits are filed against other manufacturers based on similar practices, they should all be transferred to, and centralized in, one court." Mot. at 5. Plaintiff subsequently identified, on April 25, 2024 (the day before Defendants' response was due) and without any additional context or detail, *Vaughn, et al. v. Kia America, Inc., et al.*, No. 2:24-cv-01473 (E.D. Pa. April 9, 2024). GM Defendants are opposed to the consolidation of these cases with cases against other manufacturers that are competitors of GM. Such cases would be based on those manufacturers' separate practices and policies using their own proprietary vehicle technologies. As this Panel has recognized, the Panel is "typically hesitant to centralize litigation against multiple, competing defendants," *In re Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012), as it "may unnecessarily complicate case management, due to the need to protect trade secret and confidential information" and "prolong pretrial proceedings because of, inter alia, the possible need for separate discovery and motion tracks," *In re Invokana (Canagliflozin) Prod. Liab. Litig.*, 223 F. Supp. 3d 1345, 1348 (J.P.M.L. 2016). GM Defendants expressly object to the consolidation of *Vaughn* with the Pending Actions, as defined on page 4, *infra*, and reserve the

GM Defendants respectfully submit, however, that the Eastern District of Michigan—not the Central District of California—is the appropriate venue for centralization. GM and OnStar are headquartered in Detroit, Michigan and located in the Eastern District of Michigan, and within that District is where most of the relevant witnesses and documents relating to the claims against GM and OnStar can be found. Five (5) of the fourteen (14) actions have also already been filed in the Eastern District of Michigan, three of which are pending before the same judge. The Eastern District of Michigan has also recently handled complex litigation involving automobile manufacturers and claims under various consumer protection statutes and state laws as well as data breach and data privacy class actions. Further, it has managed a significant number of MDLs in the past. Lastly, the courts within the Eastern District of Michigan are conveniently located, providing ready access to multiple airports and an array of hotels and other amenities. Thus, the District is well-suited for handling consolidated pretrial proceedings of these actions.

As such, GM Defendants join in Plaintiff's Motion for Transfer and Centralization, but respectfully request that the JPML order transfer to and consolidate the actions in the Eastern District of Michigan, as opposed to the Central District of California.

## II.     BACKGROUND

The first complaint against Defendants involving allegations of vehicle data tracking and disclosure was filed on March 13, 2024, in the Southern District of Florida. *See Chicco v. General Motors LLC et al.,* Case No. 9:24-cv-80281 (S.D. Fla March 13, 2024). Shortly after the first complaint was filed, six (6), substantively similar putative class actions were filed in (1) the Southern District of New York, *Landman v. General Motors LLC, et al.*, Case No. 1:24-cv-02238

---

right to object to consolidation of presently unidentified tag-along cases in any consolidated action as well.

(S.D.N.Y. March 25, 2024); (2) the Middle District of Pennsylvania, *Dinardo v. General Motors LLC, et al.*, Case No. 3:24-cv-00524-JKM (M.D. Pa. March 27, 2024); (3) the Eastern District of Michigan, *Reed v. General Motors LLC, et al.*, Case No. 2:24-cv-10804-JJCG-CI (E.D. Mich. March 28, 2024); *Block v. General Motors LLC, et al.*, Case No. 2:24-cv-10824-SJM-APP (E.D. Mich. March 31, 2024); and (4) the Central District of California, *King v. General Motors LLC, et al.*, Case No. 2:24-cv-02560 (C.D. Cal. March 28, 2024); *Thongsawang v. General Motors LLC, et al.*, Case No. 8:24-cv-00695 (C.D. Cal. March 29, 2024). Defendants have secured stays of or agreements to stay the majority of these actions pending a ruling from the JPML on Plaintiff Thongsawang's Motion for Transfer and Centralization.[3]

On April 5, 2024, Central District of California Plaintiff Thongsawang filed a Motion for Transfer and Centralization Pursuant to 28 U.S.C. § 1407 with the Panel, *see IN RE: Consumer Vehicle Driving Data Tracking Litigation*, Case MDL No. 3115, Dkt. 1 (U.S. Jud. Pan. Mult. Lit. April 5, 2024), which was accepted for filing on April 9, 2024, *see id*. Dkt. 3 (U.S. Jud. Pan. Mult. Lit. April 9, 2024). The Motion for Transfer and Centralization included the seven (7) actions pending on April 9, 2024. *See id*. at Dkt. 1.

Since then, seven (7) additional putative class actions have been filed in the Eastern District of Michigan (3), the Central District of California (1), and the Northern District of Georgia (3) (together with the actions included in the Motion for Transfer and Centralization, the "Pending Actions"). *See Carnine v. General Motors LLC, et al.*, Case No. 2:24-cv-11004-SDK-CI (E.D. Mich. April 16, 2024); *Cogle v. General Motors LLC, et al.*, Case No. 2:24-cv-11062-JJCG-APP

---

[3] One court, the Southern District of Florida, has denied Defendants' consent motion to stay on the basis that there is no definite time period for the JPML's decision, *see Romeo Chicco v. General Motors LLC et al.,* Case No. 9:24-cv-80281 (S.D. Fla March 13, 2024), ECF No. 19, and defendants have filed Answers, *id*. at ECF Nos. 21, 22. No discovery has been taken, and the case remains in its preliminary stages.

(E.D. Mich. April 22, 2024); *Lima v. General Motors LLC, et al.*, Case No. 2:24-cv-11119 (April 26, 2024); *Valencia v. General Motors LLC, et al.*, Case No. 2:24-cv-02978 (C.D. Cal. April 12, 2024); *Mason v. General Motors LLC et al.,* Case No. 1:24-cv-01558 (N.D. Ga. April 12, 2024); *Figlio v. General Motors LLC, et al.*, Case No. 1:24-cv-01669-TWT-JEM (N.D. Ga. April 19, 2024); *LaFlace v. General Motors LLC, et al.* (N.D. Ga. April 25, 2024).[4]  No responsive pleadings have been filed in any of those actions.[5]  As additional Pending Actions are served, Defendants are seeking stays.

**III.    ARGUMENT**

   **A. Consolidation is Appropriate Under § 28 U.S.C. 1407.**

Under 28 U.S.C. § 1407(a), consolidation for pretrial proceedings is warranted where (i) the cases involve one or more common questions of fact and (ii) transfer will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the cases. *See In re Anthem, Inc., Customer Data Sec. Breach Litig.*, 109 F. Supp. 3d 1364, 1365 (J.P.M.L. 2015).  These factors are undoubtedly satisfied here because fourteen (14) related class actions in at least six (6) different jurisdictions have been filed.

Related cases are appropriate for transfer and consolidation under Section 1407 where they "share factual issues arising from common allegations." *In re Lipitor (Atorvastatin Calcium) Mktg., Salespractices & Prods. Liab. Litig. (No. II)*, 997 F. Supp. 2d 1354, 1356–57 (J.P.M.L. 2014); *see also In re Profemur Hip Implant Prods. Liab. Litig.*, 481 F. Supp. 3d 1350, 1352

---

[4] Plaintiff Thongsawang has also purported to notice *Ulrich, et al. v. General Motors LLC*, Case No. 2:24-cv-11007 (E.D. Mich. April 17, 2024) as a related action.  Dkt. 41.  *Ulrich* is a products liability action related to automatic transmissions that bears no resemblance to the Pending Actions.  GM Defendants respectfully submit that *Ulrich* is not an appropriate case for consolidation with the Pending Actions.

[5] GM Defendants note that, at the time of this filing, *Lima* and *LaFlace* were not yet available on Pacer.

(J.P.M.L. 2020) ("[T]he substantial similarity of the claims asserted by the various plaintiffs suggest … that centralization will result in significant efficiency and convenience benefits for the parties and the courts."). That is the case here. Each of the complaints alleges, at its core, that GM and OnStar impermissibly collect driver data from customers and impermissibly furnish that data to third-party consumer reporting agencies like Lexis.[6] Given the substantial overlap among

---

[6] *See, e.g.*, *Chicco* Compl. ¶ 3 ("[Plaintiff] brings this action to challenge the actions of [GM, OnStar, and Lexis] regarding erroneous reports of derogatory and negative driving information made without Plaintiff's knowing consent."); *Landman* Compl. ¶ 1 ("Plaintiff . . . brings this action for herself and on behalf of all persons [] who had their driving data ('telematics') collected and shared by [GM and OnStar] to LexisNexis . . . without their knowledge and/or consent."); *Dinardo* Compl. ¶ 7 ("General Motors and OnStar are secretly recording personal drivers' behavior data without drivers' full knowledge and consent; these firms sell drivers' behavior data to credit or data-aggregator companies like LexisNexis without drivers' full knowledge and consent[.]"); *Reed* Compl. ¶ 1 ("This case arises out of GM and its subsidiary software company OnStar's surreptitious collection of customers', including Plaintiffs', driving telematics data . . . and their sharing and/or sale of that data to third parties to compile reports used by auto insurance companies to set rates and premiums, all without the customers' knowledge or consent"); *Block* Compl. ¶ 5 ("Plaintiffs are just two of the millions of drivers of GM-manufactured vehicles who have had their data secretly intercepted and used in this illegal scheme. They bring this action for damages and injunctive relief on behalf of all persons whose driver behavior data was impacted by Defendants' illegal conduct."); *King* Compl. ¶ 1 ("Plaintiffs . . . bring this action for themselves and on behalf of all persons [] who had their driving data [] collected and shared by [GM and OnStar] to LexisNexis . . . without their knowledge and/or consent."); *Thongsawang* Compl. ¶ 1 ("Plaintiff brings this action on behalf of herself and on behalf of all similarly situated persons [] in the United States who purchased or leased a vehicle from GM and had their location data provided to LexisNexis."); *Carnine* Compl. ¶ 1 ("This case stems from GM's longstanding surreptitious collection and sale of customer driver data telemetry (the 'driver data') without Plaintiffs' and Class Members' knowledge or consent."); *Cogle* Compl. ¶ 1("Plaintiff is a GM vehicle owner whose driving-behavior and location data was surreptitiously taken by GM and OnStar and sold to third parties, like LexisNexis, without his knowledge or consent."); *Valencia* Compl. ¶ 1 ("For many years, without Plaintiff's or Class Members' consent, Defendants have been collecting from Class Members' vehicles and selling to third parties vast amounts of location and vehicle data[.]"); *Mason* Compl. ¶ 1 ("This case arises from Defendants' covert collection of consumers' driver behavior data through computer software installed in automobile vehicles or via linked application, and the sharing, use, and sale of that data without consumers' notice, knowledge, or consent."); *Figlio* Compl. ¶ 1 ("Plaintiffs bring this action on behalf of a class of all persons who purchased or leased a vehicle from General Motors and had their personal driving information and behavior . . . transmitted without their knowing consent to unauthorized third parties, including OnStar, LexisNexis, Verisk and various insurance carriers."); *LaFalce* Compl.

the factual allegations raised in the related Pending Actions, transfer and consolidation is warranted. *See, e.g.*, *In re: Higher One OneAccount Mktg. & Sales Practices Litig.*, 908 F. Supp. 2d 1371, 1371 (J.P.M.L. 2012) ("The subject actions share numerous factual issues arising from allegations of unfair and deceptive conduct in the marketing and fee policies of the Higher One OneAccount bank account[.]").[7]

Additionally, because the factual allegations overlap, any discovery in each case will likely be duplicative, further confirming that consolidation is proper. *See, e.g.*, *In re Daily Fantasy Sports Mktg. & Sales Practices Litig.*, 158 F. Supp. 3d 1375, 1379 (J.P.M.L. 2016) ("the actions will involve common discovery regarding the nature of the DFS Defendants' online daily fantasy sports contests, their advertising and promotions, and their internal policies and practices"); *In re Commodity Exchange, Inc., Gold Futures and Options Trading Litig.*, 38 F. Supp. 3d 1394, 1395 (J.P.M.L. 2014) (centralization is appropriate where it "will eliminate duplicative discovery" and "conserve the resources of the parties, their counsel, and the judiciary"); *see also Manual for Complex Litigation* § 20.131 (4th ed. 2004) ("The objective of transfer [through the MDL process] is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts.").[8]

---

¶ 1 ("This case arises from Defendants' covert collection of consumers' driver behavior data through computer software installed in automobile vehicles or via linked application, and the sharing, use, and sale of that data without consumers' notice, knowledge, or consent.").

[7] Importantly, GM Defendants do not concede that "common questions of fact" exist, or are capable of common resolution, within the meaning of Federal Rule of Civil Procedure 23. To the contrary, GM Defendants maintain that none of the Pending Actions presents claims appropriate for resolution through class action treatment.

[8] GM Defendants address the factors that the Panel considers when evaluating a motion for transfer and consolidation but reiterate that GM Defendants do not concede that discovery on Plaintiffs' claims is appropriate. GM Defendants maintain that Plaintiffs' claims should be compelled to binding arbitration and that the class action waivers Plaintiffs accepted by agreeing to the OnStar User Terms for Connected Vehicle Services are valid and enforceable.

Minor differences in the factual details alleged in the Pending Actions are immaterial to the consolidation question, particularly because the core factual allegations and theories regarding the defendants' conduct are similar. *See, e.g.*, *In re Marriott Int'l, Inc., Customer Sec. Breach Litig.,* 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019) (explaining that "differing legal theories is not significant where . . . the actions still arise from a common factual core"); *In re Acetaminophen - ASD/ADHD Prods. Liab. Litig.*, 637 F. Supp. 3d 1372, 1375 (J.P.M.L. 2022) ("Section 1407 does not require a complete identity of common factual issues or parties as a prerequisite to transfer"). Nor does it matter that some Complaints assert claims under different state laws—the Panel "routinely ha[s] centralized actions asserting similar claims under different state statutes where they involve common questions of fact." *In re BPS Direct, LLC, & Cabela's, LLC, Wiretapping Litig.*, 677 F. Supp. 3d 1363, 1364-1365 (J.P.M.L. 2023).

Consolidation would also serve the convenience of the parties and witnesses and promote the just and efficient conduct of the cases. This Panel frequently orders transfer and consolidation where overlapping putative class actions are filed in different jurisdictions. *See, e.g.*, *In re FTX Cryptocurrency Exch. Collapse Litig.*, 677 F. Supp. 3d 1379, 1380-1382 (J.P.M.L. 2023). Indeed, the Panel has ordered consolidation when there are as few as *two* overlapping putative class actions. *See, e.g., In re: Toys "R" Us- Delaware, Inc., Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 581 F. Supp. 2d 1377, 1377 (J.P.M.L. 2008) (plaintiffs' argument that "there are only two actions pending" is "not quite sufficient to persuade" because "they are brought on behalf of nearly identical putative nationwide classes, and there is a risk of inconsistent rulings on class certification"); *see also In re: Michaels Stores, Inc., Fair Credit Reporting Act (FCRA) Litig.*, 96 F. Supp. 3d 1380, 1380-81 (J.P.M.L. 2015) (ordering centralization of three putative nationwide class actions).

Absent consolidation, each of the cases filed to date would have to be litigated, simultaneously, in federal courts across the country before different judges, which could lead to inconsistent rulings—including on key threshold issues, such as whether plaintiffs are required to submit their claims to binding arbitration. *See In re Generic Digoxin & Doxycycline Antitrust Litig.*, 222 F. Supp. 3d 1341, 1343 (J.P.M.L. 2017) (consolidating where "there [wa]s a significant risk of inconsistent rulings" if the actions proceeded individually). The concern over inconsistent rulings is especially acute in the context of multidistrict putative class actions, leading the Panel to "consistently h[o]ld that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determinations exists." *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975); *see also In re Allergan BIOCELL Textured Breast Implant Products Liab. Litig.*, 412 F. Supp. 3d 1361, 1363 (J.P.M.L. 2019) ("Centralization will ... prevent inconsistent pretrial rulings, *especially* with respect to class certification."). Consolidated pretrial proceedings "will eliminate duplicative discovery," if any, "prevent inconsistent pretrial rulings on class certification and other issues, and conserve the resources of the parties, their counsel, and the judiciary." *Marriott*, 363 F. Supp. 3d at 1374.

That this litigation would benefit from consolidation is also apparent from the fact that Movant, GM Defendants, and Co-defendant Lexis agree to it. This Panel routinely orders transfer and consolidation of overlapping putative class actions when parties agree that centralization is appropriate. *See e.g., In re: Auto. Wire Harness Sys. Antitrust Litig.*, 844 F. Supp. 2d 1367 (J.P.M.L. 2012) (consolidating pending actions in Eastern District of Michigan when "[a]ll responding parties agree that centralization of these actions is appropriate" and "[i]t is undisputed that these actions share factual questions"); *In re: Auto. Wire Harness Sys. Antitrust Litig.*, 844 F. Supp. 2d 1367 (J.P.M.L. 2012) (same).

The likelihood that the litigation will expand further also weighs in favor of centralization. *See In re Schnuck Markets, Inc., Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1381 (J.P.M.L. 2013) (granting § 1407 motion where the estimated number of affected customers across five states indicated that additional tag-along actions could be filed). There are already fourteen (14) Pending Actions with similar factual allegations and claims, and it is likely that more will follow given that seven (7) additional actions were filed in just the short time since Plaintiff Thongsawang filed the Motion for Transfer and Centralization.

In summary, consolidation is appropriate here because "[t]he number of actions and involved districts, and the substantial similarity of the claims asserted by the various plaintiffs, suggest" that "centralization will result in significant efficiency and convenience benefits for the parties and the courts" and "[p]lacing the actions before a single judge . . . will result in a significant savings of judicial and party resources." *In re Profemur Hip Implant Prod. Liab. Litig.*, 481 F. Supp. 3d 1350, 1352 (J.P.M.L. 2020).

**B. The Eastern District of Michigan is the Superior Transferee Forum.**

The Panel considers the following factors when evaluating the appropriate transferee forum for an MDL: (1) where the largest number of cases is pending; (2) where discovery has occurred; (3) where cases have progressed furthest; (4) the site of the occurrence of the common facts; (5) where the cost and inconvenience will be minimized; and (6) the experience, skill, and caseloads of available judges. *See Manual for Complex Litigation*, § 20.132 (4th ed. 2004). None of the Pending Actions have progressed past the initial pleadings stage and no discovery has been conducted, so the second and third factors are not relevant. As explained more fully below, the rest of the factors favor transfer to and consolidation in the Eastern District of Michigan, not the Central District of California. Five (5) of the fourteen (14) Pending Actions have been filed in the

Eastern District of Michigan; GM and OnStar are headquartered in Michigan; a large percentage of relevant witnesses and documents are located in the District; the District is easily accessible for all parties and counsel; Lexis agrees that consolidation there is appropriate; and the court is able and well-suited to handle complex MDL litigation of this nature.

### a. *The Eastern District of Michigan is the most convenient and logical forum.*

The Panel routinely establishes MDL proceedings in the district where defendants are headquartered, including in the Eastern District of Michigan. *See e.g., In re Gen. Motors Onstar Cont*., 502 F. Supp. 2d 1357, 1358 (J.P.M.L. 2007) (consolidating cases in Eastern District of Michigan in part because "relevant documents and witnesses are likely located in or near defendants' facilities in Michigan"); *In re Gen. Motors Corp. Sec. & Derivative Litig*., 429 F. Supp. 2d 1368, 1370 (J.P.M.L. 2006) (consolidating cases in Eastern District of Michigan, despite plaintiffs' opposition to consolidation or, alternatively, their request to consolidate in New York, because it is "where many relevant documents and witnesses are likely to be found, inasmuch as GM's principal place of business is located there"); *In re Chrysler Pacifica Fire Recall Prod. Liab. Litig*., 619 F. Supp. 3d 1349, 1351 (J.P.M.L. 2022) (consolidating cases in the Eastern District of Michigan, despite four actions pending in California district courts and plaintiffs seeking consolidation in California, because Defendant "has its headquarters in this district, and represents that the core witnesses and documents" are located there, and it "also is centrally located and easily accessible, making a convenient forum for this nationwide litigation"); *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig*., 412 F. Supp. 3d 1355, 1356 (J.P.M.L. 2019) (same); *In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab. Litig*., 398 F. Supp. 2d 1365, 1367 (J.P.M.L. 2005) (same).

The Panel should do the same here. GM and OnStar are both headquartered in and have strong ties to the Eastern District of Michigan. DeLong Decl. ¶ 4. GM has more employees in Michigan than in any other state. *Id.* ¶ 5. Moreover, a large majority of the employees involved with OnStar services are in Michigan, and more are located in the Detroit, Michigan area than any other location. *Id.* ¶¶ 6-7. As such, a large percentage of the relevant information, documents, and witnesses are in the Eastern District of Michigan.[9] These facts weigh heavily in favor of transfer to this District. *See e.g., In re Gen. Motors Onstar Cont.,* 502 F. Supp. 2d 1357, 1358 (J.P.M.L. 2007) (consolidating cases in Eastern District of Michigan in part because "relevant documents and witnesses are likely located in or near defendants' facilities in Michigan"); *In re Upjohn Co. Antibiotic "Cleocin" Prods. Liab. Litig.,* 450 F. Supp. 1168, 1170-71 (J.P.M.L. 1978) (reasoning that when the bulk of discovery will come from a defendant, its home district is the preferable forum for the litigation).

Moreover, the Eastern District of Michigan is a convenient district for the parties. "[A] litigation of this scope will benefit from centralization in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well-developed support system for legal services." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 196 F. Supp. 2d 1375, 1376–77 (J.P.M.L. 2002); *see also In re Jamster Mktg. Litig.*, 427 F.

---

[9] Defendant Lexis is located in Atlanta, Georgia, and there will, therefore, also be relevant witnesses and documents in the Northern District of Georgia, where three (3) Pending Actions have been filed. *See Mason v. General Motors LLC et al.,* Case No. 1:24-cv-01558 (N.D. Ga. April 12, 2024); *Figlio v. General Motors LLC, et al.*, Case No. 1:24-cv-01669-TWT-JEM (N.D. Ga. April 19, 2024). GM Defendants respectfully submit that, as detailed in Lexis's Response to Motion for Transfer and Centralization, in the event the Panel is not inclined to transfer the Pending Actions to the Eastern District of Michigan, the next most logical transferee forum would be the Northern District of Georgia. Defendant Verisk Analytics, Inc., which has been named in only three of the Pending Actions, is located in New Jersey, where no related actions against any defendant are pending.

Supp. 2d 1366, 1368 (J.P.M.L. 2006) (choosing a transferee forum in an "accessible metropolitan location"). This Panel has already concluded that the District is a convenient forum for nationwide MDLs. *See e.g., In re Chrysler Pacifica Fire Recall Prod. Liab. Litig.*, 619 F. Supp. 3d 1349, 1351 (J.P.M.L. 2022) (consolidating cases in the Eastern District of Michigan in part because the District "is centrally located and easily accessible, making a convenient forum for this nationwide litigation."); *In re Upjohn Co. Antibiotic "Cleocin" Prod. Liab. Litig.*, 450 F. Supp. 1168, 1171 (J.P.M.L. 1978) (noting that "the Eastern District of Michigan is in a geographically central and convenient location"). The Detroit Metropolitan Wayne County Airport—an international airport with direct flights to major U.S. cities (including Lexis's headquarters near Atlanta)—is just 30 minutes from the Detroit federal courthouse. And there is no shortage of hotels or other amenities in Detroit, making it a logical transferee forum for the Pending Actions.[10]

Finally, five (5) of the fourteen (14) Pending Actions—*Reed, Block, Carnine, Cogle*, and *Lima*—have been filed in the Eastern District of Michigan, meaning more actions have been filed in that District than in any other jurisdiction. The Panel has often found the district where the highest number of related actions were filed to be an appropriate transferee court for consolidation. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 560 F. Supp. 2d 1359, 1361 (J.P.M.L. 2008) (selecting district where largest number of cases had been filed); *In re Marine Hose Antitrust Litig. (No. II)*, 531 F. Supp. 2d 1381, 1382 (J.P.M.L 2008) (same). And the Pending Actions in the Eastern

---

[10] The OnStar User Terms for Connected Services, which govern the services at issue in the Pending Actions, also have an exclusive venue provision which provides that, if the arbitration provision is held invalid or unenforceable, "the parties consent to personal jurisdiction and exclusive venue in the state and federal courts of the Eastern District of Michigan." User Terms for Connected Services, https://www.onstar.com/legal/user-terms (May 1, 2018). While the GM Defendants submit that the arbitration provision is valid and enforceable, and the GM Defendants intend to move to compel the claims to arbitration whether in the individual actions or any centralized proceeding ordered by the JPML, this exclusive venue provision provides an additional ground for any centralized proceeding to be located in the Eastern District of Michigan.

District of Michigan collectively bring claims on behalf of eleven Plaintiffs—more than in any other district—further favoring that District. *See In re Profiler Products Liab. Litig.*, 429 F. Supp. 2d 1381, 1382 (J.P.M.L. 2006) (centralizing litigation at "the location where a sizeable number of plaintiffs have chosen to file their claims").

### b. *The Eastern District of Michigan is well-suited to handle an MDL.*

When determining the appropriate court for consolidation, this Panel also takes into consideration both the docket conditions and the expertise of the proposed forums, as well as the court's ability to expeditiously resolve complex litigation. *See* Manual for Complex Litigation § 20.131 (4th ed. 2004) (explaining that the Panel considers "the experience, skill, and caseloads of available judges"); *In re Morgan Stanley & Co., Inc., Overtime Pay Litig.* (No. II), 471 F. Supp. 2d 1353, 1354 (J.P.M.L. 2006) (selecting transferee forum based on its ability to "further enhance the prospects for a just and speedy resolution of all [related] actions"). Here, the Eastern District of Michigan's current docket is uncongested and efficient: the court has just 333 total cases per judgeship (down from 347 in 2019), and the court collectively tried 13 cases in 2023.[11] The JPML has previously recognized that the Eastern District of Michigan "offers a relatively geographically central district with favorable caseload conditions." *See also In re: Packaged Ice Antitrust Litig.*, 560 F. Supp. 2d 1359, 1361 (J.P.M.L. 2008) (transferring actions to the Eastern District of Michigan). And this Panel has also acknowledged that the Eastern District of Michigan is capable of resolving complex litigation expeditiously.

The Eastern District of Michigan also frequently handles substantial MDL proceedings in an efficient and effective manner, demonstrating the court's ability to take on the Pending Actions

---

[11] *See United States District Courts — National Judicial Caseload Profile*, U.S. Courts, https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2023_0.pdf   (Dec.   31, 2023).

at issue here. *See e.g., In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab. Litig.*, MDL No. 1718 (E.D. Mich.); *In re: Auto. Wire Harness Sys. Antitrust Litig.*, MDL No. 2349 (E.D. Mich.). In fact, the Eastern District of Michigan currently manages several MDLs. *See e.g., In re: Neo Wireless, LLC, Patent Litigation,* MDL No. 3034 (E.D. Mich.).[12] The District has also recently handled complex litigation involving automobile manufacturers and claims under various consumer protection statutes and state laws, *see e.g., In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Practices Litig.*, MDL No. 2901 (E.D. Mich) (Cox, C.J.)*; Roe v. Ford Motor Co.*, Case No. 2:18-cv-12528 (E.D. Mich.) (Michelson, J.)*; Wozniak v Ford Motor Co.*, Case No. 2:17-cv-12794 (E.D. Mich.) (Murphy, J.), as well as data breach and data privacy class actions, *see e.g., Lochridge v. Quality Temp. Servs., Inc.*, Case No. 22-CV-12086 (Behm, J.); *Ratcliff v. Morley Companies, Inc.*, Case No. 1:22-CV-10360 (Ludington, J.); *In re StockX Customer Data Sec. Breach Litig.*, Case No. 2:19-cv-12441 (Roberts, J.).

Moreover, most of the Pending Actions in the Eastern District of Michigan are currently pending before and assigned to Judge Jonathan J.C. Grey. While Judge Grey has not yet presided over an MDL, GM Defendants are confident that he could ably manage the consolidated proceedings in this litigation. *See In re BPS Direct, LLC, & Cabela's, LLC, Wiretapping Litig.,* 677 F. Supp. 3d at 1365 (transferring consolidated cases to "an able jurist who has not yet had the opportunity to preside over an MDL"). And of course, there are also a number of other Eastern District of Michigan judges that GM Defendants submit would be well-suited to manage this MDL given their experience and current caseloads, including Chief Judge Sean F. Cox, *see, e.g.*, *In re:*

---

[12] *See* U.S. Judicial Panel on Multidistrict Litigation, *MDL Statistics Report - Distribution of Pending MDL Dockets by District*, U.S. Courts, https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-April-1-2024.pdf (Apr. 1, 2024).

*Refrigerant Compressors Antitrust Litig.,* 626 F. Supp. 2d 1320, 1321 (J.P.M.L. 2009) (transferring to Judge Cox, in part, because he had "a caseload that is relatively favorable to steer this litigation on a prudent course"), and Judge Linda V. Parker, Judge Laurie J. Michelson, and Judge Stephen J. Murphy, III, who have not managed MDLs but are experienced jurists who have handled numerous class actions involving the automotive industry and consumer protection statutes, *see, e.g.*, Harrison v. General Motors LLC, No. 21-12927 (E.D. Mich.) (Michelson, J.); *Crawford v. FCA US LLC*, No. 20-12341 (E.D. Mich.) (Murphy J.); *Sulligan v. Ford Motor Co.*, No. 22-11668 (E.D. Mich.) (Parker, J.), class actions involving the Fair Credit Reporting Act, *see, e.g.*, *Hillson v. Kelly Services, Inc.*, No. 15-cv-10803 (E.D. Mich.) (Michelson, J.), and various civil and criminal actions involving the Federal Wiretap Act, *see, e.g.*, *Abu v. Dickson*, No. 20-10747 (E.D. Mich.) (Parker, J.); *AFT Michigan v. Project Veritas*, 17-13292 (E.D. Mich.) (Parker J.); *Garback v. Lossing*, No. 09-12407 (E.D. Mich.) (Murphy, J.). Each has few or no motions on the most recent CJRA report of motions pending over six months.[13]

### c. *The Central District of California is not the superior venue.*

The Central District of California is not the most logical transferee forum.[14] First, the Eastern District of Michigan has more related cases (5) than the Central District of California (3).

---

[13] *U.S. District Courts—Report Of Motions Pending Over Six Months*, U.S. Courts, https://www.uscourts.gov/sites/default/files/data_tables/cjra_8_0930.2023.pdf (Nov. 22, 2023).

[14] On April 19, 2024, Plaintiff Landman filed a Request to Transfer Cases to the Southern District of New York—where only one action has been filed and no defendant has been served—asserting that LexisNexis Risk Solutions, Inc. "is headquartered in New York." Dkt. 15 at 1–2. That assertion is incorrect. As noted above, the Lexis entity named in the Pending Actions is headquartered in Georgia, not New York. Thus, as with the Central District of California, none of the defendants is located in the Southern District of New York; nor are the majority of the plaintiffs, witnesses, or documents. Further, the Southern District of New York is currently handling eleven (11) MDLs—more than double the amount currently pending in the Eastern District of Michigan and the Northern District of Georgia. *See* U.S. Judicial Panel on Multidistrict Litigation, *MDL Statistics Report - Distribution of Pending MDL Dockets by District*, U.S. Courts,

Three (3) of the five (5) cases pending in the Eastern District of Michigan have already been assigned to Judge Grey.  Further, the Central District of California is not the first-filed forum.[15] None of the defendants is located in the Central District of California; nor are the majority of the plaintiffs, witnesses, or documents located there.  The Central District of California is also not centrally located geographically, especially relative to Defendants' headquarters, making travel more expensive and time-consuming.  And while Plaintiff Thongsawang posits that the Central District of California is the "fastest" docket among the various courts in which the Pending Actions are proceeding, the Motion for Transfer and Centralization acknowledges that the median time from filing to disposition in the Central District of California and the Eastern District of Michigan differ by a mere handful of months.  *See* Mot. at 13.  Indeed, to the extent that overall dockets are relevant, the comparative docket load for both districts favors the Eastern District of Michigan— in 2023, the Central District of California had 484 pending cases per judgeship versus 333 in Michigan.  Moreover, Judge Birotte, the judge advocated for by Plaintiff and currently presiding over *Thongsawang*, not only already has an MDL on his docket, but that MDL is slated for trial this upcoming summer.  *Id*. at 14.

In short, all relevant factors favor transfer to and consolidation in the Eastern District of Michigan—and none weighs in favor of consolidation in the Central District of California.

---

https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-April-1-2024.pdf (Apr. 1, 2024).

[15] Though the district of the first-filed action is given some weight, no party has advocated for the Southern District of Florida as the appropriate transferee forum.  In fact, Plaintiff in the first-filed action has filed a notice of non-opposition to transfer and centralization in the Central District of California. Dkt. 20.  In any event, only one action with one Plaintiff is currently pending there, no defendant is headquartered in the Southern District of Florida, the majority of documents and witnesses are not located there, and West Palm Beach is not as centrally located or accessible as Detroit.  Nor is the first-filed action substantially more "procedurally advanced" than the other Pending Actions, as all cases are in their infancy.  *In re Broiler Chicken Grower Antitrust Litig.,* 509 F. Supp. 3d 1359, 1362 (J.P.M.L. 2020).

## IV. CONCLUSION

For the foregoing reasons, GM Defendants respectfully request that the Panel transfer the Actions against GM Defendants, plus any future tag-along actions, to the Eastern District of Michigan for consolidated pretrial proceedings in accordance with 28 U.S.C. § 1407.

DATED: April 26, 2024

Respectfully Submitted,

By: */s/ David L. Balser*

David L. Balser
Susan M. Clare
John C. Toro
**KING & SPALDING LLP**
1180 Peachtree St. NE
Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
E-mail: dbalser@kslaw.com
E-mail: sclare@kslaw.com
E-mail: jtoro@kslaw.com

*Counsel for Defendants General Motors LLC and OnStar, LLC*