**BEFORE THE UNITED STATES JUDICIAL
PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE CONSUMER VEHICLE DRIVING DATA TRACKING LITIGATION | **MDL No. 3115** |

**INTERESTED PARTIES BRUCE MASON AND BRIAN LAFALCE'S
RESPONSE TO THE MOTION FOR TRANSFER
AND CENTRALIZATION PURSUANT TO 28 U.S.C. § 1407**

Interested Parties, Bruce Mason and Brian LaFalce, by and through their undersigned counsel, submit this response to the Motion for Transfer and Centralization Pursuant to 28 U.S.C. § 1407 (ECF No. 1) (the "Motion"), and respectfully request that the Panel transfer all Actions to the Northern District of Georgia before the Honorable Thomas W. Thrash, Jr.

<u>**SUMMARY**</u>

For the following reasons, the Panel should transfer the actions included in the above-captioned MDL to the Northern District of Georgia:

(1)     The core of the wrongdoing giving rise to these actions occurred in the Northern District of Georgia.  Defendant LexisNexis Risk Solutions is headquartered in Alpharetta, Georgia and operates its Consumer Service Center from an Atlanta, Georgia address.  LexisNexis collected and stored plaintiffs' driver behavior data in the Northern District of Georgia and is a named defendant in all but one of the related Actions.  It also entered into agreements to buy and sell the data there.  As such, a large number of the likely witnesses and relevant documents here are located in the Northern District of Georgia.  For these reasons, LexisNexis has identified the Northern District of Georgia as an appropriate transferee district.

(2)     Two of the actions filed in the Northern District of Georgia have been assigned to the Honorable Thomas W. Thrash, Jr.  Judge Thrash has presided over and effectively handled 11 MDLs, which is more than any other living judge except one.  Judge Thrash has also presided over other MDL proceedings like this one involving the collection and storage of consumers' electronic data.  As of May 1, 2024, Judge Thrash is not presiding over any pending MDL proceedings.

(3)     Movant has requested that the Panel transfer these actions to the Central District of California.  None of the defendants in these actions are located in California and their corporate headquarters are all located over 2,000 miles away.  The Central District of California is an inconvenient district for the defendants in these actions and therefore is not an appropriate transferee district.

(4)     Defendants GM and OnStar support the transfer of these actions to the Eastern District of Michigan because they have a large number of employees in Michigan.  However, neither Defendant contends that their employees located in Michigan were involved with the collection or storage of Plaintiffs' driver behavior data. They also never claim that they collected or stored any of Plaintiffs' driver behavior data in Michigan.  GM and OnStar have therefore failed to establish that a majority of their witnesses or documents relating to these actions are located in Michigan.

(5)     Other Plaintiffs support transfer of these actions to the Southern District of New York, the Middle District of Pennsylvania, the Eastern District of Pennsylvania, and the District of Minnesota.  However, none of the Defendants have their corporate headquarters in these districts and none of the underlying facts relating

2

to their behavior occurred in any of these districts.  These districts therefore have little, if any, meaningful connection to these actions.

## **BACKGROUND**

On March 11, 2024, the *New York Times* published an investigative report[1] explaining that Defendants, General Motors LLC and OnStar, LLC (respectively, "GM" and "OnStar") were surreptitiously collecting the driver behavior data of vehicle owners without their consent.  More specifically, GM used its OnStar software installed on its vehicles to collect driver behavior data detailing things like acceleration, braking, high speed events, and driving times and distances.  GM and OnStar then sold this data to Defendants, LexisNexis Risk Solutions, Inc. and/or Verisk Analytics, Inc. (respectively, "LexisNexis" and "Verisk") without driver consent, knowledge or providing them with any compensation.  After collecting and storing the data, LexisNexis and Verisk then sold it to auto insurance companies that used the data to increase driver premiums.

Since the *New York Times* published its investigative report, there have been at least twenty-one (21) proposed class action complaints[2] (individually, an "Action" and collectively, the "Actions") filed by various Plaintiffs (collectively, the "Plaintiffs") against Defendants, GM, OnStar, LexisNexis, and Verisk (collectively, the "Defendants").  These proposed class action complaints have been filed in nine federal district courts across the country.  As of May 15, 2024, there were:

---

[1] The *New York Times* investigative report was entitled, "Automakers are Sharing Consumers' Driving Behavior with Insurance Companies."  It is available at:
https://www.nytimes.com/2024/03/11/technology/carmakers-driver-tracking-insurance.html?smid=nytcore-ios-share&referringSource=articleShare&sgrp=c-cb

[2] The number of proposed class action complaints was determined by a review of the docket for MDL No. 3115 as of May 15, 2024.

- Seven Actions filed in the Eastern District of Michigan;[3]

- Four Actions filed in the Central District of California;[4]

- Three Actions filed in the Northern District of Georgia;[5]

- Two Actions filed in the Southern District of New York;[6] and

- One Action filed in each of the Middle District of Pennsylvania, the Eastern District of Pennsylvania, the Southern District of Florida, the Northern District of California, and the District of Minnesota.[7]

The Actions contain similar claims for violations of various state consumer protection laws, the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA"), and common law claims for invasion of privacy, unjust enrichment, and tortious interference with contracts. All of the

---

[3] *Reed, et al. v. General Motors, LLC, et al.* (Case No. 2:24-cv-10804); *Block, et al. v. General Motors, LLC, et al.* (Case No. 2:24-cv-10824); *Carnine, et al. v. General Motors, LLC, et al.* (Case No. 4:24-cv-11004); *Cogle v. General Motors, LLC, et al.* (Case No. 2:24-cv-11062); *Lima v. General Motors, LLC, et al.* (Case No. 2:24-cv-11119), *Martinez v. General Motors, LLC, et al.* (Case No. 4:24-cv-11221); and *Drews v. General Motors, LLC, et al.*, (Case No. 2:24-cv-11194). *Ulrich, et al. v. General Motors, LLC, et al.* (Case No. 2:24-cv-11007) has claims involving defective 8L transmissions in GM vehicles and was incorrectly identified as a related action for this MDL. (ECF No. 61, at pp. 1 to 2).

[4] *Thongsawang v. General Motors, LLC, et al*. (Case No. 8:24-cv-00695); *King, et al. v. General Motors, LLC, et al.* (Case No. 2:24-cv-02560); *Valencia v. General Motors, LLC, et al.* (Case 2:24-cv-02978); and *Garcia v. General Motors, LLC, et al.* (Case No. 2:24-cv-03515).

[5] *Mason v. General Motors, LLC, et al.* (Case No. 1:24-cv-01558); *Figlio, et al. v. General Motors, LLC, et al.* (Case No. 1:24-cv-01669); and *LaFalce v. General Motors, LLC, et al.* (Case No. 1:24-cv-01807).

[6] *Landman v. General Motors, LLC, et al.* (Case No. 1:24-cv-02238); and *Davids, et al. v. General Motors, LLC, et al.* (1:24-cv-03203).

[7] *Dinardo v. General Motors, LLC, et al.* (Case No. 3:24-cv-00524, M.D. Pa.); *Vaughn v. Kia America, Inc., et al.* (Case No. 2:24-cv-01473, E.D. Pa.); *Chicco v. General Motors, LLC, et al.* (Case No. 9:24-cv-80281, S.D. Fla); *Smith v. General Motors, LLC, et al.* (Case No. 3:24-cv-02540, N.D. Cal); and *Behm v. General Motors, LLC, et al.* (Case No. 0:24-CV-01517, (D.Minn.)

Actions are in the same nascent stage of litigation.  Defendants have not answered or otherwise responded to any of the various complaints and no discovery has yet been conducted.

## ARGUMENT

### A.     The Panel Should Transfer and Centralize the Actions

Under 28 U.S.C. § 1407(a), the Panel may transfer and centralize cases pending in different districts that meet the following three requirements: (1) the cases must "involv[e] one or more common questions of fact", (2) the transfer and centralization will further "the convenience of parties and witnesses", and (3) the transfer and centralization will "promote the just and efficient conduct of [the] actions."   The Panel has acknowledged the benefits of centralization. "Centralization under Section 1407 will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary."  *In re: Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*, 643 F. Supp. 2d 1378, 1380 (J.P.M.L. 2009).  As explained below, the Panel should transfer and centralize the Actions under 28 U.S.C. 1407(a) because all three requirements are met.

#### 1.     The Actions Involve Common Questions of Fact

The Actions involve the same common core of factual allegations.  The Plaintiffs allege that GM and OnStar collected their driver behavior data without their knowledge and then sold it to LexisNexis and/or Verisk without their knowledge or consent.  LexisNexis and/or Verisk collected and stored Plaintiffs' driver behavior data and then sold it to auto insurance companies that then used the data to increase Plaintiffs' insurance premiums.  In its response to the Motion to transfer and centralize these Actions, LexisNexis confirmed that it buys driver behavior data from GM and then sells it to automobile insurance companies.  (ECF No. 50, at p. 3).  The Actions involve the same putative class of car owners and lessees in the United States who had their driver behavior data collected and sold without receiving financial compensation.

Six Actions have named Verisk as an additional defendant because it collected and sold their driver behavior data (in addition to LexisNexis).[8]  LexisNexis has been named a Defendant in 20 of the 21 Actions.[9]   Nonetheless, transfer and centralization of all the Actions is still appropriate because 28 U.S.C. § 1407(a) "does not require a complete identity of common factual issues or parties as a prerequisite to transfer, and the presence of…differing legal theories is not significant where, as here, the actions still arise from a common factual core."  *In re:  Equifax, Inc., Customer Data Sec. Breach Litig.*, 289 F. Supp. 3d 1322, 1325 (J.P.M.L. 2017) (*quoting In re:  Auto Body Shop Antitrust Litig.*, 37 F.Supp.3d 1388, 1390 (J.P.M.L. 2014)).  Because all of the Actions arise from a common core of operative facts, the first requirement for transfer and centralization under Section 1407(a) is met.

### 2.    Transfer and Centralization will Further the Convenience of the Parties and Witnesses

All of the Actions will involve witnesses and require discovery from the same set of Defendants – GM, OnStar, LexisNexis, and/or Verisk.  Transfer and centralization will save the Defendants the time and expense associated with defending themselves in multiple class actions located in different district courts throughout the country.  Moreover, transfer and centralization of the Actions will avoid the need for the parties to take repetitive depositions and serve duplicative discovery requests on each other.  *In re Pilot Flying J Fuel Rebate Contract Litigation (No. 11)*,

---

[8] *LaFalce v. General Motors, LLC, et al.* (Case No. 1:24-cv-01807, N.D. Ga.); *Figlio, et al. v. General Motors, LLC, et al.* (Case No. 1:24-cv-01669, N.D. Ga.); *Lima v. General Motors, LLC, et al.* (Case No. 2:24-cv-11119, E.D. Mi.); *Martinez v. General Motors, LLC, et al.* (Case No. 4:24-cv-11221, E.D. Mi.); *Drews v. General Motors, LLC, et al.*, (Case No. 2:24-cv-11194, E.D. Mi.); and *Davids, et al. v. General Motors, LLC, et al.* (1:24-cv-03203, S.D.N.Y.).

[9] *Reed, et al. v. General Motors, LLC, et al.* (Case No. 2:24-cv-10804, E.D. Mi.)  While LexisNexis was not named as a Defendant in this Action, the Complaint still alleges that LexisNexis obtained drivers' behavior data from GM and OnStar without their consent.  (*Id.* at ECF No. 1, ¶¶ 32 to 34 and 37).  LexisNexis also collected the driver behavior data of one of the two Plaintiffs in that Action, which led to a sharp increase in his auto insurance premiums.  *Id.* at ¶¶ 41 to 42.

11 F. Supp. 3d 1351, 1352 (J.P.M.L. 2014) ("Centralization will avoid repetitive depositions of [the defendant's] officers and employees and duplicative document discovery regarding the alleged scheme.").  As such, the second requirement for transfer and centralization under Section 1407(a) is met.

### 3. Transfer and Centralization Will Promote the Just and Efficient Conduct of the Actions

Transfer and centralization under Section 1407(a) will also promote judicial economy.  The Panel can save numerous judges and courts throughout the country considerable time by transferring and centralizing these Actions into one MDL before a single court and judge rather than forcing multiple courts and judges to deal with overlapping discovery issues, inconsistent rulings, and duplicative motions.

Transfer and centralization of the Actions is therefore appropriate because all three requirements under Section 1407(a) are met.

### B. The Northern District of Georgia is the Most Appropriate District for the Transfer of the Actions

The Panel does not use a single factor to select the transferee district.  *Manual for Complex Litig.* § 20.131 (4th ed. 2004).  In selecting an appropriate transferee district, the Panel usually considers "[1] where the largest number of cases is pending, [2] where discovery has occurred, [3] where cases have progressed furthest, [4] the site of the occurrence of the common facts, [5] where the cost and inconvenience will be minimized, and [6] the experience, skill, and caseloads of available judges."  *Id.*

"Finally, the Panel looks for an available and convenient transfer forum, usually one that (1) is not overtaxed with other MDL cases, (2) has a related action pending on its docket, (3) has a judge with some degree of expertise in handling the issues presented, and (4) is convenient to

the parties." *Id.* at § 22.33. An analysis of these factors makes clear that the Northern District of Georgia is the most appropriate district to transfer these Actions.

### 1. Many of the Underlying Transactions and Occurrences Occurred in the Northern District of Georgia and the Court has Substantial Experience Handling Similar MDL Proceedings

The heart of the alleged wrongful conduct in these Actions occurred in the Northern District of Georgia. Defendant LexisNexis Risk Solutions is headquartered in Alpharetta, Georgia and operates its Consumer Service Center from an Atlanta, Georgia address. In its response to the Motion, LexisNexis stated that it is a Georgia corporation with its principal place of business located in Alpharetta, Georgia (not New York City).[10] Defendant LexisNexis Risk Solutions' website adds that it is "[h]eadquarted in metro-Atlanta, Georgia."[11] LexisNexis therefore collected driver behavior data in this district and stores it there. LexisNexis also agreed to buy and sell this driver behavior data to auto insurance companies in this district. Moreover, Plaintiffs called LexisNexis at its Consumer Service Center in this district to obtain their reports that include their driving behavior data. As such, many relevant LexisNexis' witnesses and documents are likely located in the Northern District of Georgia.

LexisNexis has confirmed that the Northern District of Georgia has a strong connection to the underlying facts here and identified the Northern District of Georgia as an appropriate alternative transferee court.[12] (ECF No. 50, at p. 3). LexisNexis explained that the Actions involve

---

[10] ECF No. 50, at p. 4, n. 4. ("LNRS also opposes venue, as advocated by Plaintiff Landman, in the United States District Court for the Southern District of New York…As a threshold matter, Plaintiff Landman is simply incorrect in asserting that LNRS' headquarters is located in New York. LNRS is a corporation organized under the laws of Georgia with its principal place of business in Alpharetta, Georgia.")

[11] https://risk.lexisnexis.com/about-us (Last Visited on May 15, 2024).

[12] LexisNexis stated that it has no objection to GM and OnStar's request to the transfer the Actions to the Eastern District of Michigan, but did not provide any reasons why the Panel should do so.

Case MDL No. 3115    Document 122    Filed 05/17/24    Page 9 of 19

allegations regarding its "Telematics on Demand" or "TOD" product.  *Id.*  LexisNexis enters into agreements with GM and other automobile manufacturers to furnish certain telematics data regarding the operation of the vehicles that they manufactured (*i.e.*, the driver behavior data) and then contracts to sell the data to insurers.  *Id.*  LexisNexis confirmed that the "principal place of [its] TOD business is Alpharetta, Georgia."  *Id.*  The improperly collected and monetized driving data was inappropriately sold to the insurers was released by and through LexisNexis, not through GM.  Therefore, LexisNexis' corporate headquarters and its principal place of business for its TOD activities that gave rise to these Actions are both based at the same location in Alpharetta, Georgia.  According to LexisNexis, its "documents and witnesses relevant to this action are conveniently available in the Northern District of Georgia, and conduct challenged by the Related Actions occurred in Georgia."  *Id.*  As such, LexisNexis argues that the Northern District of Georgia is an appropriate court to handle these related Actions.

The Panel has transferred similar cases involving data breaches to the Northern District of Georgia where the defendant that stored the data was located in that district and argued for transfer to that district.  *See, e.g., In re KeyBank Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1372, 1374 (J.P.M.L. 2023) ("The Northern District of Georgia is an appropriate transferee forum for this litigation.  Five of the ten actions now pending are in this district before Judge Stephen D. Grimberg, and several plaintiffs and both [defendants] support centralization there.  And since [one of the defendants] is headquartered there, relevant evidence and witnesses likely will be in this district."); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 289 F. Supp. 3d 1322, 1326 (J.P.M.L. 2017); ("We select the Northern District of Georgia as the transferee district for this

---

(ECF No. 50, at p. 2).  It identified the Northern District of Georgia as the most appropriate alternative transferee court.  *Id.*

litigation.  Equifax is headquartered in that district, and relevant documents and witnesses thus likely will be found there."); *In Re:  The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 65 F. Supp. 3d 1398, 1400 (J.P.M.L. 2014) ("We are persuaded that the Northern District of Georgia is the most appropriate transferee district for pretrial proceedings in this litigation.  Home Depot is headquartered in the Northern District of Georgia. Thus, relevant documents and witnesses are likely located within the district.").  As a result, the Northern District of Georgia has developed expertise handing similar MDL proceedings.

The Panel should transfer these Actions to the Northern District of Georgia because it is the district with the strongest connection to these Actions as Plaintiffs' driver behavior data was collected, stored and sold from there and the decisions regarding the subject practices were likely made from there.  This Court's expertise in handling similar MDL proceedings also strongly supports transferring the Actions there.

> **2.   The Northern District of Georgia has an Experienced Judge who can handle these Actions**

Two of the three actions filed in the Northern District of Georgia[13] have been assigned to the Honorable Thomas W. Thrash, Jr. and the third case will likely be reassigned to Judge Thrash as the first-filed judge.[14]  Judge Thrash is one of the country's most experienced judges in handling

---

[13] *Mason v. General Motors, LLC, et al.* (Case No. 1:24-cv-01558) and *Figlio, et al. v. General Motors, LLC, et al.* (Case No. 1:24-cv-01669).

[14] The Civil Cover Sheet for the Northern District of Georgia requires counsel to identify the judge for all related cases for assignment purposes.  The Local Rules of Civil Procedure for the Northern District of Georgia also require counsel to identify all related cases in their Joint Preliminary Report and Discovery Plan.  L.R. 16.2(1).

MDL proceedings.  As of July 2021, Judge Thrash has presided over 11 MDLs,[15] which is second only to former JPML Judge Charles Breyer, who has presided over 12 MDLs.[16]  Judge Thrash is not currently presiding over any MDL proceedings.[17]

All of the Actions involve claims based on Defendants' wrongful collection of Plaintiffs' electronic driver behavior data.  Judge Thrash has presided over two MDLs that involved the collection of consumers' electronic data and alleged breaches of that data.  *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 289 F. Supp. 3d 1322 (J.P.M.L. 2017); *In Re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 65 F. Supp. 3d 1398 (J.P.M.L. 2014).  He has also presided over an MDL involving a large auto manufacturer defendant.  *Meade v. Ford Motor Co.*, 2011 WL 4402539 (N.D. Ga. Sept. 20, 2011) (involving claims against Ford relating to a defective braking switch).  Judge Thrash's other MDLs include:  *In re: Atlas Roofing Corp. Chalet Shingle Prod. Liab. Litig.*, 988 F. Supp. 2d 1377 (J.P.M.L. 2013) (defective shingles); *In re AndroGel Antitrust Litig.*, 655 F. Supp. 2d 1351 (J.P.M.L. 2009) (patent-infringement); *In re Conagra Peanut Butter Prods. Liab. Litig.*, 495 F. Supp. 2d 1381 (J.P.M.L. 2007) (products liability claims).

The Panel has acknowledged Judge Thrash's considerable experience and ability handling MDL proceedings.  *In re:  Home Depot, Inc. Customer Data Sec. Breach Litig.*, 65 F. Supp. 3d at 1400 ("Finally, by appointing the Honorable Thomas W. Thrash, Jr., to preside over this matter, we select a jurist with multidistrict litigation experience and the ability to steer this litigation on an efficient and prudent course."); *In re: Atlas Roofing Corp. Chalet Shingle Prod. Liab. Litig.*,

---

[15] *Meet JPML's Favorite Judge, Tasked With New Opioid MDL* (Last visited on May 15, 2024) available at:  https://www.law360.com/articles/1391883/meet-jpml-s-favorite-judge-tasked-with-new-opioidmdl.  A copy of this article is attached as *Exhibit 1*.

[16] *Id.* at p. 2.

[17] https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-May-1-2024.pdf

988 F. Supp. 2d at 1378 ("By centralizing this litigation before Judge Thomas W. Thrash, Jr., we are selecting a jurist well-versed in the nuances of complex, multidistrict litigation to steer this matter on a prudent course.")

Judge Thrash has served on the federal bench for the past 27 years, *see* Exhibit 1, at pp. 6 to 7, and served as the Chief Judge for the Northern District of Georgia from 2014 to 2021. *Id*. Judge Thrash graduated from Harvard Law School in 1976 and has nearly 50 years' experience as an attorney and judge. *Id.* He was in private practice from 1976 to 1977 and again from 1981 to 1997. *Id.* Judge Thrash also served as an Assistant District Attorney for Fulton County, Georgia from 1977 to 1980, *id,* and worked as a law professor at Georgia State University from 1986 to 1997. *Id.*

There is no doubt that Judge Thrash is perfectly suited and very well-equipped to effectively and efficiently handle these Actions.

### 3. The Northern District of Georgia is a Convenient District for the Parties and Witnesses and Will Minimize their Costs

The Northern District of Georgia provides a convenient district for the Defendants in these Actions. LexisNexis' corporate headquarters and its principal place of business for its TOD activities that gave rise to these Actions is located in Alpharetta, GA, which is a suburb of Atlanta, Georgia and only a 35-minute drive from the Northern District of Georgia courthouse in Atlanta.[18] The other three Defendants are located on the East Coast or in the Midwest and thus in fairly close range of Atlanta.[19] The Northern District of Georgia thus provides a convenient destination for the Defendants and their witnesses.

---

[18] All driving times and distances discussed in this brief were determined based on searches conducted using Google Maps.

[19] GM and OnStar are based in Detroit, Michigan. Verisk is based in Jersey City, New Jersey.

The Northern District of Georgia is also very travel-friendly.  It is home to one of the best and largest international airports in the country.  In December 2023, the Hartsfield-Jackson Airport in Atlanta received the prestigious Business Traveler Award for "North America's Best Airport" for the second consecutive year.[20]  In March 2024, it received the Airport Service Quality Award for Best Airport in North America for the third straight year.[21]  It also retained its title as the world's busiest airport in 2023.[22]  The Hartfield-Jackson Airport is only a 20-minute drive to the Northern District of Georgia courthouse in Atlanta.  When transferring MDLs to the Northern District of Georgia in the past, the Panel has emphasized that it is "accessible for domestic and international parties and witnesses" and "offers a readily accessible and convenient transferee forum."  *In re TransUnion Rental Screening Sols., Inc., Fair Credit Reporting Act Litig.*, 437 F. Supp. 3d 1377, 1378 (J.P.M.L. 2020); *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prod. Liab. Litig.*, 254 F. Supp. 3d 1381, 1383 (J.P.M.L. 2017).

Again, Defendant LexisNexis has also identified the Northern District of Georgia as a convenient transferee court because:

> The Northern District of Georgia is where [LexisNexis] is located with easy access to evidence; benefits from ample air connections and hotel accommodations; is not overburdened by MDL proceedings; and several judges of the district are well very

---

[20] *Hartsfield-Jackson Named "North America's Best Airport" for 2nd Year in a Row* (Last Visited on May 15, 2024). Available at:  https://www.fox5atlanta.com/news/hartsfield-jackson-named-north-americas-best-airport-for-2nd-year-in-a-row

[21] *Hartsfield-Jackson Named "Best Airport Over 40 Million Passengers in North America"* (Last Visited on May 15, 2024).  Available at:  https://www.wsbtv.com/news/local/atlanta/hartsfield-jackson-named-best-airport-over-40-million-passengers-north-america/M6ZNAFEUIVB2XHRWBWPKUMD7UE/

[22] *ATL Retains its Title as the World's Busiest Airport Despite Shifts in International Air Traffic* (Last Visited on May 15, 2024).  Available at:  https://www.gpb.org/news/2024/04/16/atl-retains-its-title-the-worlds-busiest-airport-despite-shifts-in-international

qualified to preside, including Judge Thomas W. Thrash, Jr. and Judge J.P. Boulee, each of whom have prior MDL experience but no current MDL proceedings.

(ECF No. 50, at p. 2).  The Northern District of Georgia has 15 district judges[23] and there are only four MDLs pending in that district.[24]  Because the Northern District of Georgia presents a travel-friendly location for the parties and witnesses and other considerable advantages, it is the most appropriate district for the transfer of these Actions.

> **4.**      **The Northern District of Georgia is One of the Leading Districts Where Actions Have Been Filed for this MDL**

There are currently three Actions related to this MDL pending in the Northern District of Georgia.  The only other districts that have more Actions pending before them are the Eastern District of Michigan (seven) and the Central District of California (four).  However, the Northern District of Georgia provides significant advantages over both of these districts and the other four suggested transferee districts.[25]

> **(a)**      **The Central District of California is not the best district for the transfer of these Actions**

Movant has requested that the Panel transfer these Actions to the Central District of California.  (ECF No. 1, at pp. 11 to 16).  However, that district has very little, if any, connection to these Actions.  None of the four main Defendants have their corporate headquarters located in California and each of them are based *more than 2,000 miles away*.  Moreover, the majority of the facts that gave rise to these Actions occurred in other districts far from California.  LexisNexis

---

[23] https://www.gand.uscourts.gov/district-judge-directory.

[24] https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-May-1-2024.pdf

[25] While other Actions were filed in the Southern District of Florida and the Northern District of California, there were no motions or responses arguing for the transfer the Actions to those districts.  *See* Docket for MDL No. 3115.

and Verisk did not buy, sell, collect, or store Plaintiffs' driver behavior data in California. LexisNexis has stated that it did not sell any driver behavior data for auto insurers to use in California, but did so in Georgia.  (ECF No. 50, at p. 5).

Movant also argues that the Panel should transfer these Actions to the Central District of California because "there is no central point of gravity for the cases."  (ECF No. 75, at pp. 5 to 6). Movant notes that the Defendants are located in different states (Michigan, Georgia, and New Jersey) rather than in one state or central region.  *Id.*  Movant also states that Honda and Hyundai may be added as defendants to this MDL and both of these car manufacturers (like Kia) have their corporate headquarters in California.  *Id.*  These arguments miss the point for two reasons.  First, there is a central point of gravity for these Actions because most of the witnesses and documents are located in the Northern District of Georgia (where LexisNexis collected and stored Plaintiffs' driver behavior data).  Second, the Panel should not choose an appropriate transferee court based on the location of potential parties who are not currently involved in this MDL.  There is also no indication that Honda and Hyundai stored or collected any of Plaintiffs' driving data at their corporate headquarters in California.  The Central District of California is therefore not the most appropriate transferee forum.

> **(b)     The Eastern District of Michigan is not the most appropriate district for the transfer of these actions**

GM and OnStar support transfer to the Eastern District of Michigan.  (ECF No. 57, at p. 12).  They argue that GM has more employees in Michigan than any other state and that a large majority of employees involved with its OnStar services are located in Michigan.  *Id.*  However, GM and OnStar never claim that they collected or stored any of Plaintiffs' driver behavior data in Michigan.  They also never contend that the GM or OnStar employees located in Michigan were involved with the collection or storage of Plaintiffs' driver behavior data.  GM and OnStar

have therefore failed to establish that a majority of their witnesses or documents relating to these Actions are located in Michigan.  This starkly contrasts LexisNexis' acknowledgement that the majority of its witnesses and documents are located in the Northern District of Georgia.  (ECF No. 50, at p. 3).

**(c)      None of the Defendants have Their Corporate Headquarters in the Remaining Four Potential Transferee Districts**

Other Plaintiffs have advocated for the transfer of these Actions to the Southern District of New York, the Middle District of Pennsylvania, the Eastern District of Pennsylvania, and the District of Minnesota.[26]  (ECF Nos. 15, 47, 48, and 84).  However, none of the Defendants have their corporate headquarters in these districts and none of the underlying facts giving rise to the Actions occurred in any of these districts.  As such, the majority of the witnesses and documents for these Actions are not located in these districts.  Defendants did not buy, sell, collect, or store Plaintiffs' driver behavior data in any of these districts and therefore they have little connection to these Actions and are not appropriate transferee districts.

Verisk has requested the Panel transfer the Actions to the Southern District of New York because that district is close to its corporate headquarters in Jersey City, New Jersey.  (ECF No. 103, at p. 4).  However, Verisk has only been named as a defendant in six Actions while LexisNexis has been named as a defendant in 20 of the 21 Actions.[27]  Accordingly, the overwhelming majority of the witnesses and documents in this MDL will be located near its corporate headquarters in the Northern District of Georgia.

---

[26] Two Plaintiffs (Jacquelyn Vaughn and Jonathan DiNardo) have advocated that the Panel transfer these Actions to the Middle District of Pennsylvania and alternatively, to the Eastern District of Pennsylvania.  (ECF No. 47, at pp. 2 to 3; ECF No. 48, at p. 3).  They are both represented by the same counsel.  *Id.*

[27] *See, supra,* at footnotes 8 and 9.

**(d)      The Northern District of Georgia has Fewer MDLs Pending Before it that Almost All of the Other Potential Transferee Districts**

The Northern District of Georgia is home to fewer pending MDLs (four) than almost all of the other suggested districts, including the Southern District of New York (twelve), the Eastern District of Pennsylvania (seven), the Eastern District of Michigan (five), the Central District of California (five), and the District of Minnesota (five).[28]  While the Middle District of Pennsylvania only has one pending MDL, there are no Defendants located there and it has little, if any, connection to the facts in these Actions.[29]  The Northern District of Georgia is therefore the most appropriate transferee forum, especially in light of the strong connection that this district has to the facts alleged in these Actions.

The Northern District of Georgia also moves civil cases expeditiously from filing to trial. Among the suggested districts here, the Northern District of Georgia has one of the fastest median times for moving civil actions through the pretrial process.  More specifically, the Northern District of Georgia has a significantly faster median time from the filing of a civil action to trial (31 months) than the Middle District of Pennsylvania (52.3 months), the Eastern District of Michigan (50.9 months), the Southern District of New York (42 months), and the District of Minnesota (38.6 months).[30]  Only the Central District of California (29.7 months) and the Eastern District of Pennsylvania (27.6 months) have marginally faster median times from the filing of a civil action

---

[28] https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-May-1-2024.pdf

[29] *Id.*

[30] https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2023_0.pdf

to trial than the Northern District of Georgia and neither has any real, meaningful connection to the allegations here.[31]

The Panel should therefore transfer the Actions to the Northern District of Georgia.

**5.      The Last Two Factors Are Neutral**

The last two factors that the Panel often considers are the district where (1) discovery has occurred and (2) the Actions have progressed to the furthest stage of litigation.  Both of these factors are neutral here.  No discovery has taken place in any of the Actions.  Moreover, the Defendants have not answered or otherwise responded to any of the complaints filed in these Actions.

**CONCLUSION**

For the reasons detailed above, the Actions should be transferred to the Northern District of Georgia and assigned to Judge Thrash.

Date:  May 17, 2024                     Respectfully submitted,

                                        */s/ Bryan L. Clobes*
                                        Bryan L. Clobes
                                        Alexander J. Sweatman
                                        Christopher P. Dolotosky
                                        **Cafferty Clobes Meriwether & Sprengel LLP**
                                        135 South LaSalle Street, Suite 3210
                                        Chicago, IL  60603
                                        T:  (312) 782-4880
                                        bclobes@caffertyclobes.com
                                        asweatman@caffertyclobes.com
                                        cdolotosky@caffertyclobes.com

---

[31] *Id.*

Bryan Aylstock
D. Nicole Guntner
Reagan Charleston Thomas
**Aylstock, Witkin, Kreis & Overholtz PLLC**
17 E. Main Street, Suite 200
Pensacola, FL  32502
T:  (850) 202-1010
baylstock@awkolaw.com
nguntner@awkolaw.com
rthomas@awkolaw.com

M. Brandon Smith
**Childers, Schlueter & Smith LLC**
1932 North Druid Hills Road, Suite 100
Atlanta, GA  30319
T:  (404) 419-9500
bsmith@cssfirm.com

*Counsel for Plaintiff Bruce Mason*

Michael A. Caplan
T. Brandon Waddell
**Caplan Cobb LLC**
75 Fourteenth Street, NE, Suite 2700
Atlanta, GA  30309
T:  (404) 596-5600
mcaplan@caplancobb.com
bwaddell@caplancobb.com

*Counsel for Plaintiff Brian LaFalce*